[No. A062278. First Dist., Div. Three. Dec. 9, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
JIMMIE GARRETT, Defendent and Appellant.

[No. A064828. First Dist., Div. Three. Dec. 9, 1994.]

In re JIMMIE GARRETT on Habeas Corpus.

**[Opinion certified for partial publication]***

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III, IV, and V.

## COUNSEL

Robert Spertus, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and David H. Rose, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MERRILL, J.**—Appellant Jimmie Garrett was convicted by a jury of one count of threatening another person with immediate great bodily injury (Pen. Code, § 422[1]). The jury was unable to reach a verdict on the charge that appellant was an ex-felon in possession of a firearm, and a mistrial was granted as to that count. Additionally, appellant admitted a prior felony conviction for which he served a separate prison term, for purposes of an enhancement under section 667.5, subdivision (b). He appeals from the judgment of conviction, and has filed a petition for writ of habeas corpus contending he was denied effective assistance of counsel. We affirm the judgment and deny the petition.

I

Appellant and his wife Beverly (hereafter Wife), the victim in this case, were married in November 1989. They lived in an apartment in Berkeley with their two small children and appellant's seventeen-year-old sister Altia.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

Appellant worked as a truck driver and Wife stayed home to care for the youngest child.

On January 21, 1993, Wife received a phone call from Altia who said that she had injured her hand at school and was at Kaiser Hospital. Later that day, Altia telephoned Wife again to inform her that she was about to be released from the hospital and needed a ride home. Wife then telephoned appellant who had gone to a bar after work, asking him to pick up Altia at the hospital. Appellant did so. Appellant dropped Altia off at the apartment but did not come in himself.

Around 9 o'clock that evening, appellant telephoned Wife from a tattoo parlor. Appellant said he was planning to get a tattoo that incorporated her name and wanted her suggestions on a design. Wife was angry because it was payday and appellant had not been home since morning and the family was out of food. Wife expressed her anger and hung up the phone. Appellant called her back and unleashed a barrage of obscenities, followed by a threat to beat her and concluding with a statement that: "[Y]ou better sit here on this god damned phone and listen to me, because when I get off this phone, I'm coming there to put a bullet in your head."

The threat made Wife fearful because of appellant's violent history. She was aware that appellant had been convicted of voluntary manslaughter after shooting a man in 1985. Additionally, she knew that in July 1991, following another skirmish with a third party, appellant obtained a gun which he kept at the apartment. Finally, according to Wife, appellant had beaten her on numerous occasions during the marriage. She never reported the beatings, she said, because appellant was on parole and she did not want him to be rearrested.

With this history in mind, Wife called 911 following appellant's threat. She told the 911 operator what had happened and asked for police assistance. She further told the operator that there was a gun in the apartment and she would use it to defend herself. After talking to the 911 operator, Wife talked by telephone with her mother-in-law and mother, expressing concern about the threat made by appellant.

Upon his arrival at the apartment, Berkeley Police Officer Stuart Nakamura found Wife in a very scared and nervous state. She was peeking out the window and running around the apartment. Officer Nakamura seized the gun he found on the premises, which was loaded. He then took Wife and the two small children to the police station.

Appellant testified in his own defense at trial. He denied making the alleged threat nor knowing about the gun. According to appellant, Wife, in fact, threatened to "blast" him. Appellant did admit under cross-examination that he had hit Wife on six occasions in the past. He further admitted prior convictions for voluntary manslaughter and possession of cocaine for sale.

## II

■ Prior to trial, defense counsel moved to exclude evidence relating to Wife's fear of appellant—in particular, Wife's knowledge of appellant's prior conviction for manslaughter and the fact that appellant had beaten Wife on several occasions. Defense counsel argued that this evidence was irrelevant to the question of whether or not appellant violated section 422. In the alternative, he argued that even if such evidence was relevant, its prejudicial impact outweighed its probative value. Following a hearing, the trial court denied the motion, finding that the subject evidence was both relevant and highly probative.

Appellant contends that the trial court's ruling was in error. We disagree.

Section 422 provides in pertinent part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, *with the specific intent that the statement is to be taken as a threat,* even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat, and *thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety,* shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison." (Italics added.)[2]

As noted by the trial court, the statute incorporates a mental element on the part of not only the defendant but the victim as well. In order to establish a section 422 violation, the prosecution must establish (1) that the defendant had the specific intent that his statement would be taken as a threat (whether or not he actually intended to carry the threat out), and (2) that the victim was in a state of "sustained fear." The prosecution must additionally show

---

[2]Section 422 has been constitutionally challenged as overbroad in that it punishes the defendant whether or not he intended to carry out the threat. However, this challenge has been rejected by the courts. (See *People* v. *Fisher* (1993) 12 Cal.App.4th 1556, 1558-1560 [15 Cal.Rptr.2d 889]; and *In re David L* (1991) 234 Cal.App.3d 1655, 1661 [286 Cal.Rptr. 398].)

that the nature of the threat, both on "its face and under the circumstances in which it is made," was such as to convey to the victim an immediate prospect of execution of the threat and to render the victim's fear reasonable.

Clearly, in the case at bar, the fact that Wife knew that appellant had killed a man with a gun in the past and that appellant was aware that she knew, inasmuch as he was the one to apprise Wife of this fact, is extremely relevant and probative in terms of establishing these elements—i.e., that appellant had the specific intent that his statement that he would "put a bullet in [Wife's] head," would be taken as a threat; that upon hearing the statement, Wife was in a state of sustained fear; and that the nature of the statement was such as to convey an immediate prospect of execution of the threat and to render Wife's fear reasonable. In the same way, evidence that Wife herself had been a past victim of appellant's violence, was thoroughly germane to these issues as well.

Furthermore, upon the facts of this case, it cannot be said that the probative value of the evidence is outweighed by its prejudicial effect. Seldom will evidence of a defendant's prior criminal conduct be ruled inadmissible when it is the primary basis for establishing a crucial element of the charged offense. Accordingly, we find that the trial court did not abuse its discretion in denying appellant's motion to exclude this evidence. (See *In re David L., supra,* 234 Cal.App.3d 1655, 1660 [circumstances surrounding threat, including fact that threat "followed a series of hostile encounters between [defendant] and the victim culminating in a fight," demonstrated that victim's fear for his safety and the safety of his family was reasonable].)

■ Additionally, appellant maintains that the subject evidence constitutes inadmissible character evidence under Evidence Code section 1101. Subdivision (a) of section 1101 proscribes the admission of evidence of a person's character or trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) "when offered to prove his or her conduct on a specified occasion." However, subdivision (b) of section 1101 states an exception to the general rule: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact . . . other than his or her disposition to commit such an act."

As demonstrated above, the evidence at issue here was admitted not for the purpose of showing appellant's disposition to commit the charged offense but, rather, for the purpose of establishing crucial elements of that

offense. Thus, Evidence Code section 1101 posed no bar to the admission of this evidence.

## III-V[4]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VI

The judgment is affirmed and the petition for writ of habeas corpus is denied.

White, P. J., and Chin, J., concurred.

---

[4]See footnote, *ante*, page 962.