Filed 10/4/13  P. v. Phetchamphone CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TONY PHETCHAMPHONE,<br><br>Defendant and Appellant. | F064548<br><br>(Fresno Super. Ct. No. F11906159)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Mark W. Snauffer, Judge.

James F. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

### INTRODUCTION

Appellant/defendant Tony Phetchamphone (defendant) was charged and convicted after a jury trial in the Superior Court of Fresno County of committing several offenses against his father, Thonghanh Phetchamphone (Mr. Phetchamphone), during an altercation at

their residence: count I, criminal threats (Pen. Code,[1] § 422); count II, dissuading a witness by force or threat, with the jury finding that he used force or the threat of force on the victim's person or property (§ 136.1, subds. (b)(1), (c)(1)); and count III, misdemeanor battery (§ 242). Defendant had one prior serious felony conviction (§ 667, subd. (a)(1)), and one prior strike conviction (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)). He was sentenced to 11 years in prison.

On appeal, defendant contends his convictions for criminal threats and dissuading a witness are not supported by substantial evidence. Defendant further contends the trial court improperly permitted the prosecution to introduce evidence about his prior conviction for attempted second degree murder in Minnesota in 2002. Defendant argues the prior conviction constituted inadmissible propensity evidence and was extremely prejudicial. We will affirm.

## **FACTS**

As of October 2011, defendant had been living in his parents' two-bedroom apartment in Fresno for one year. Defendant's sister, Oly, also lived there with her husband and their young child. Defendant's parents slept in one bedroom, and Oly and her family slept in the other bedroom. Defendant slept on the couch.

Oly testified that defendant was already living at their parents' apartment before she moved in with her family. Prior to Oly's arrival, her parents repeatedly told her that they were having problems with defendant. They were always arguing; defendant was always starting trouble with his father; and her parents did not like the way defendant acted. Mr. Phetchamphone asked Oly to tell defendant to move out. Oly always replied that it was not her problem.

Once Oly and her family moved in with her parents, she saw her father and defendant argue nearly every day. Oly never saw defendant hit Mr. Phetchamphone, and her father

_____

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

never threatened defendant. Oly believed Mr. Phetchamphone was afraid of defendant because defendant was "way bigger than him."

**The argument**

Around 12:30 a.m. on October 23, 2011, defendant was asleep on the living room couch and the lights were off. Oly and her family were asleep in one of the bedrooms. Oly's mother was visiting a relative and was not at home.

Mr. Phetchampone arrived home from the grocery store, and Oly got up to help him with the grocery bags. Mr. Phetchampone asked her to turn on the kitchen light as they unloaded the car. Oly turned on the light, and Mr. Phetchampone went back to the car for more bags.

As Oly and Mr. Phetchampone brought the grocery bags into the kitchen, defendant woke up and was upset because she had turned on the light. Defendant told Oly: " '[F]**cking bitch, why did you turn on the light? F**king bitch.' " Oly asked to whom he was talking. Defendant replied: " 'You, you f**king bitch.' "

Oly testified that she "cussed at him back" and called him a " 'f**king bitch.' " Defendant got up from the couch and walked towards Oly. He got "in [her] face] and said: " 'I'll [f]*** your ass up," and "I'm going to whoop your ass.' "

Oly testified that defendant looked angry, "like he would actually like hurt me." Oly was afraid defendant was going to hit her. Oly went into her bedroom because she was scared, and she did not want to provoke defendant.

Mr. Phetchampone asked defendant why he spoke that way, because they were just putting away the groceries. Defendant complained they bothered him while he was sleeping. Mr. Phetchampone yelled at defendant that he needed to respect the family because they were paying the bills, and he was living under their roof. Mr. Phetchampone and defendant argued, and defendant was angry. Defendant yelled at Mr. Phetchamphone, and said he

3.

should kick out Oly and her family because her husband had a job, and they had money, but defendant did not have anything.[2]

At some point during this argument, defendant walked down the bedroom hallway. Oly was in her bedroom with her family. Defendant looked at her and said, " 'I'll whip your husband[']s ass, too ….' "[3]

**Defendant punches and threatens Mr. Phetchampone**

Defendant walked back to the living room and continued to argue with Mr. Phetchamphone. As they argued, defendant told Mr. Phetchampone that he was not his father, and he did not like him. Defendant told his father that he was going to " 'kick your ass, beat the shit out of you.' "

Mr. Phetchamphone walked down the bedroom hallway and defendant followed him. Mr. Phetchamphone repeatedly complained that defendant should not act that way since he did not pay the bills. Defendant replied they bothered him while he was sleeping.

Defendant suddenly clenched his fist and punched Mr. Phetchamphone in the lower back from behind. Mr. Phetchamphone fell forward and hit a hallway shelf, which left a "big bump" on his forehead. Mr. Phetchamphone stumbled into Oly's bedroom and fell on the bed.

Mr. Phetchamphone testified he was afraid that defendant might kill him after defendant punched him. Mr. Phetchamphone was afraid because defendant was big, and he knew about defendant's prior conviction for attempted murder. Mr. Phetchamphone knew defendant had been to prison but did not know any details about the conviction.[4]

---

[2] At trial, Oly testified that Mr. Phetchamphone may have been drinking earlier that evening. However, Mr. Phetchamphone testified that he had not been drinking that night.

[3] Defendant was not charged or convicted of committing any offenses against Oly or her husband.

[4] In issue III, *post*, we will address defendant's argument that the court improperly permitted Mr. Phetchamphone to testify about defendant's prior conviction.

Defendant paced up and down the hallway, outside the bedroom, after he hit Mr. Phetchamphone. Defendant then went toward his father, who was lying face-down on Oly's bed. Oly was not sure if defendant was going to hit their father again. Oly's husband, who was holding their child, stepped between defendant and Mr. Phetchamphone. Oly grabbed defendant's arms to protect Mr. Phetchamphone, and repeatedly told defendant to stop. Mr. Phetchamphone yelled that he was hurt and in pain. Defendant replied that Mr. Phetchamphone should not "be talking shit. That's what you get for talking too much." Defendant left the bedroom.

Mr. Phetchamphone testified that during this encounter, defendant screamed in his face that he would "kick [his] ass, beat the shit out of [him]."

Oly and her husband remained in the bedroom with Mr. Phetchamphone. He was still on the bed, grabbing his back. He yelled that he was hurt and in pain, and they needed to call the police.

**The family leaves the apartment**

Mr. Phetchamphone ran out of the bedroom and went outside. Oly told her husband that they should grab their child and leave because she was scared of defendant. Oly and her family followed Mr. Phetchamphone outside. Oly left so quickly that she did not grab her child's things.

As Oly left her bedroom, she saw defendant standing near the front door, smoking a cigarette. Oly's husband and child were in the car. Mr. Phetchamphone was standing next to the car, and he looked scared. Mr. Phetchamphone had run out of the house so quickly that he did not put on his shoes, and he was barefoot. He told Oly to go back and get his shoes.

As Oly grabbed the shoes, defendant said he was afraid Mr. Phetchamphone was " 'going to call the cops on me.' "[5] Oly testified defendant was calm when he made the

---

[5] Oly testified that Mr. Phetchamphone had been "known" to call the police when he had previously argued with defendant.

5.

statement. Oly assured defendant they were just going to a motel. She made that statement so defendant would not stop her from leaving. Oly also told defendant that he should not live with Mr. Phetchamphone, if they did not get along.

Oly gave the shoes to Mr. Phetchamphone and joined her family in the car. Mr. Phetchamphone did not get in the car, and thought they did not want him with them. Oly told Mr. Phetchamphone to get in, and they could drop him off. Mr. Phetchamphone said he had nowhere to go, and asked if they were going to call the police. Oly told him to just get in the car. Mr. Phetchamphone got in the car and again told Oly to call the police.

Oly's husband drove away. Mr. Phetchamphone kept screaming that they had to call the police because he was hurt, and said: " 'I'm not going to go back home before he kills me.' " Oly called the police while they were still in the car. Oly's husband drove to a nearby grocery store, where they met with the officers.

Oly testified that when were in the car, Mr. Phetchamphone said that defendant threatened to kill all of them if they called the police. However, Oly testified she never heard defendant make that threat to her father when they were in the house. Oly thought defendant might have made such a statement a few weeks earlier, during another argument.

**The family's statements about defendant's threats**

Around 1:00 a.m., Oly and her family met with police officers in the grocery store's parking lot.

Officer Todd Turney interviewed Oly outside the presence of the other members of her family. Officer Turney testified Oly said that defendant told Mr Phetchamphone "that if he contacted the police regarding the incident that he would kill him. This was stated while they were inside the bedroom all together." Oly also told Officer Turney that after defendant said he would kill Mr. Phetchamphone, defendant "later told him that if he contacted the police to report the incident that he would kick his ass." Oly told Officer Turney that she heard these statements "firsthand," directly from defendant.

6.

Officer Benito Soto conducted a brief preliminary interview of Mr. Phetchamphone in English, outside the presence of other family members. Mr. Phetchamphone was able to respond in "broken" English, and Officer Soto obtained a brief statement about the incident. Officer Soto testified that Mr. Phetchamphone had an injury on the left side of his forehead. It was a red bump, and there was a swelling and slight redness to it. Mr. Phetchamphone said he did not need any medical treatment.

Officer Phaymany Syvongxay arrived to assist with Mr. Phetchamphone's interview as the Laotian translator. Officer Soto advised Officer Syvongxay about the situation and the questions he wanted to ask. Officer Syvongxay then conducted a more detailed interview with Mr. Phetchamphone and translated his answers for Officer Soto.

During this interview, Mr. Phetchamphone told the officers that he arrived home and turned on the lights. Defendant told him, " '[I]f you do that again, if you turn on the lights and wake me up again, I'll kill you.' " Mr. Phetchamphone also said that defendant told him that if he "called the police when defendant got out of prison, he would come back and kill them all …." Mr. Phetchamphone said defendant made the statement as defendant yelled "at the group of them inside the room."[6]

## DISCUSSION

### I.     Criminal threats

Defendant contends there is insufficient evidence to support his conviction in count I for violating section 422, criminal threats against Mr. Phetchamphone. "In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable

___

[6] As noted, *ante*, Oly testified that while they were in the car, Mr. Phetchamphone said that defendant threatened to kill him. Oly further testified that when the police asked her if defendant threatened them, she repeated what her father had said in the car, but she never heard defendant make such a threat that night. Oly believed Mr. Phetchamphone was referring to threats defendant made during another incident a few weeks earlier.

doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

"The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] 'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' " [Citations.]' [Citation.]" (*People v. Stanley* (1995) 10 Cal.4th 764, 792-793.)

A. **Section 422**

"In order to prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement ... is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat – which may be 'made verbally, in writing, or by means of an electronic communication device' – was 'on its face and under the circumstances in which it [was] made,... so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citation.]" (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

"Section 422 'was not enacted to punish emotional outbursts, it targets only those who try to instill fear in others. [Citation.]' [Citation.] The statute 'does not punish such things

as "mere angry utterances or ranting soliloquies, however violent." [Citation.]' [Citation.] Instead, a criminal threat 'is a specific and narrow class of communication,' and 'the expression of an intent to inflict serious evil upon another person. [Citation.]' [Citation.]" (*People v. Wilson* (2010) 186 Cal.App.4th 789, 805-806 (*Wilson*).)

" 'A threat is sufficiently specific where it threatens death or great bodily injury. A threat is not insufficient simply because it does "not communicate a time or precise manner of execution, section 422 does not require those details to be expressed." [Citation.]' [Citation.] In addition, section 422 does not require an intent to actually carry out the threatened crime. [Citation.] Instead, the defendant must intend for the victim to receive and understand the threat, and the threat must be such that it would cause a reasonable person to fear for his or her safety or the safety of his or her immediate family. [Citation.]" (*Wilson*, *supra*, 186 Cal.App.4th at p. 806.)

In addition, the third element under section 422 " '*does not* require an unconditional threat of death or great bodily injury.' [Citation.]" (*Wilson*, *supra*, 186 Cal.App.4th at p. 806, italics added in original.) "… 'Most threats are conditional; they are designed to accomplish something; the threatener hopes that they *will* accomplish it, so that he won't have to carry out the threats.' " (*People v. Bolin*, *supra*, 18 Cal.4th at p. 339, italics added in original.) "… 'A seemingly conditional threat contingent on an act highly likely to occur may convey to the victim a gravity of purpose and immediate prospect of execution.' [Citation.]" (*Id*. at p. 340.) "[W]e understand the word 'immediate' to mean that degree of seriousness and imminence which is understood by the victim to be attached to the *future prospect* of the threat being carried out, should the conditions not be met." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538, italics in original, fn. omitted.)

Finally, the four and fifth elements of section 422 require the victim "reasonably to be in sustained fear" for his or her own safety or the safety of his or her family." (§ 422.) As used in the statute, " 'sustained' " has been defined to mean 'a period of time that extends beyond what is momentary, fleeting, or transitory .… The victim's knowledge of defendant's

9.

prior conduct is relevant in establishing that the victim was in a state of sustained fear. [Citation.]' " (*Wilson*, *supra*, 186 Cal.App.4th at p. 808.)

"The prosecution must prove that the defendant had the specific intent that his statement would be taken as a threat, whether or not he actually intended to carry it out. Besides requiring this showing of defendant's mental element, the statute also requires proof of a mental element in the victim. [Citations.]" (*People v Allen* (1995) 33 Cal.App.4th 1149, 1156.) "Mental state and intent are rarely susceptible of direct proof and must therefore be proven circumstantially. [Citations.] Consequently, a defendant's actions leading up to the crime may be relevant to prove his or her mental state and intentions at the time of the crime. [Citations.]" (*People v. Thomas* (2011) 52 Cal.4th 336, 355.)

## B. <u>Analysis</u>

Defendant's conviction for violating section 422 is supported by substantial evidence. Defendant uttered a string of verbal threats and curses against both his sister and father because he was annoyed when Oly turned on the lights, and Oly and his father unloaded the groceries and awakened him while he slept on the couch. Defendant's specific intent that his statements be taken as threats is established by the escalating nature of the incident. He was not content to curse his father and sister, or to let go of the incident when they both tried to withdraw. Instead, defendant followed Mr. Phetchamphone down the bedroom hallway and punched him in the back with a closed fist. The force of the blow threw Mr. Phetchamphone's head into a hallway shelf, and then he fell onto Oly's bed. Defendant still did not withdraw. He paced outside the bedroom and then came at his father again. Oly and her husband stepped between defendant and Mr. Phetchamphone because they believed defendant was going to strike him again. Mr. Phetchamphone testified that during this encounter, defendant screamed in his face that he would " 'kick [his] ass and beat the shit out of [him].' " As Oly hurriedly left the house with the rest of the family, defendant expressed his fear that Mr. Phetchamphone was going to call the police.

Defendant asserts there is insufficient evidence to support his conviction because Oly testified she never heard defendant threaten Mr. Phetchamphone during the argument in the house, and she never told the police that she heard such a threat. Defendant notes that Mr. Phetchamphone only spoke Laotian, the police interviewed him through an interpreter, and there may have been some confusion and contradictions during his interview.

At trial, however, the officers who interviewed the family within minutes of the altercation testified that Oly said that defendant threatened to kill Mr. Phetchamphone if he contacted the police about the incident. Defendant also said that he would kick Mr. Phetchamphone's "ass" if he called the police. The officers testified that Oly said defendant made these statements while they were in the bedroom together. Oly told the officers that she heard these statements directly from defendant. Mr. Phetchamphone told the officers that defendant said, " '[I]f you do that again, if you turn on the lights and wake me up again, I'll kill you.' " Mr. Phetchamphone also reported that defendant said that if he called the police, defendant would "come back and kill them all" when he got out of prison. Mr. Phetchamphone said defendant made these statements when defendant was "yelling at the group of them inside a room." While Oly testified that she never heard defendant make these threats, she also admitted that she told the officers what Mr. Phetchamphone had related while they were in the car. The conflict between the officers' testimony and Oly's version of what was said raised a question of fact and credibility for the jury to resolve.

Mr. Phetchamphone was clearly in sustained fear. He testified he was frightened by defendant's threats because defendant had just punched him, defendant was bigger than he, and he knew about defendant's prior conviction and prison term for attempted murder.[7] Indeed, Mr. Phetchamphone was so frightened that he ran out of the house barefoot and without his shoes. Once they were in the car, he frantically yelled at Oly and her husband to

---

[7] In issue III, *post*, we will address defendant's contentions that the court abused its discretion when it admitted evidence of his prior conviction for attempted murder.

call the police because he was afraid defendant would kill him. While Oly and her husband were not alleged as victims, their own reactions to the incident are indicative of the fear that everyone felt, since they rushed out of the house without grabbing sufficient supplies for their young child. Oly also testified that when defendant asked if they were going to call the police, she falsely told defendant they were just going to a motel for the night because she was afraid that defendant would stop them from leaving.

The entirety of the evidence supports defendant's conviction for criminal threats against Mr. Phetchamphone – that defendant willfully threatened to kill or harm him during their argument about turning on the lights, punching the victim, and threatening to kill him if he called the police; defendant had the specific intent that the victim take the statements as threats given his physical attack upon him; defendant's verbal threat was so unequivocal as to convey to the victim a gravity of purpose and immediate prospect of execution of the threat, given the reactions of Mr. Phetchamphone and Oly; the victim explained that he was in sustained fear for his safety based on defendant's assault, their prior arguments, defendant's prior conviction, and the nature of the threats; and the victim's fear was reasonable for the same reasons.

## II.     Dissuading a witness by force or threat

In count II, defendant was charged and convicted of dissuading a witness, Mr. Phetchamphone, by force or threat, in violation of section 136.1, subdivisions (b)(1) and (c)(1). Defendant contends his conviction is not supported by substantial evidence.

### A. Section 136.1

"To prove a violation of section 136.1, subdivision (b)(1), the prosecution must show (1) the defendant has attempted to prevent or dissuade a person (2) who is a victim or witness to a crime (3) from making any report of their victimization to any peace officer or other designated officials." (*People v. Upsher* (2007) 155 Cal.App.4th 1311, 1320.) The prosecution must also establish that "the defendant's acts or statements [were] intended to affect or influence a potential witness's or victim's testimony or acts …." (*People v.*

12.

*McDaniel* (1994) 22 Cal.App.4th 278, 284.)  In other words, "section 136.1 is a specific intent crime."  (*Ibid.*)

A violation of section 136.1, subdivision (b)(1) may be treated as either a misdemeanor or a felony.  (§ 136.1, subd. (b)(1).)  Section 136.1, subdivision (c)(1) makes the offense in subdivision (b)(1) a felony where the person undertakes the acts of dissuasion "knowingly and maliciously," and "[w]here the act is accompanied by force or by *an express or implied threat of force or violence*, upon a witness or victim or any third person or the property of any victim, witness, or any third person."  (§ 136.1, subd. (c)(1), italics added; *People v. Upsher*, *supra*, 155 Cal.App.4th at p. 1320.)

Section 136.1, subdivision (b)(1) targets a defendant's prearrest efforts to prevent a crime from being reported to the authorities.  (*People v. Fernandez* (2003) 106 Cal.App.4th 943, 950.)  Thus, dissuading a victim from reporting a crime is itself a crime, and it is a felony pursuant to section 136.1, subdivision (c)(1) if the perpetrator used force or the threat of force to dissuade the victim.  (*People v. Ortiz* (2002) 101 Cal.App.4th 410, 415-416.)  The perpetrator must have the specific intent to keep the victim from reporting the crime.  (*People v. Womack* (1995) 40 Cal.App.4th 926, 930; *People v. McDaniel*, *supra*, 22 Cal.App.4th at p. 284.)

### B.  Analysis

Defendant's conviction for dissuading Mr. Phetchamphone, as a victim, of reporting a crime by force or threat of force, is supported by substantial evidence.  Defendant physically assaulted Mr. Phetchamphone, appeared to make another effort to physically attack him, and repeatedly threatened him.  Defendant made these threats against Mr. Phetchamphone to prevent him from calling the police and reporting the incident.  As set forth in issue I, *ante*, Mr. Phetchamphone told the officers that defendant said, " '[I]f you do that again, if you turn on the lights and wake me up again, I'll kill you.' "  However, defendant's threats against his father were not limited to the original dispute about the lights.  Mr. Phetchamphone also reported that defendant said that if he called the police, defendant would "come back and kill

13.

them all" when he got out of prison. Mr. Phetchamphone said defendant made these statements when defendant was "yelling at the group of them inside a room."

Defendant argues his conviction must be reversed because there is no evidence he made any threats against Mr. Phetchamphone. As in issue I, *ante*, defendant's argument is based on the alleged conflict between Oly's trial testimony, and the testimony by the officers about the statements made by Oly and Mr. Phetchamphone. As we have explained, however, the officers testified that both Oly and Mr. Phetchamphone stated defendant threatened to kill Mr. Phetchamphone if he called the police, and Oly told the police that she heard defendant make the statements firsthand. While Oly testified that she was merely referring to statements defendant made during an earlier dispute, she admitted that she related to the officers what Mr. Phetchamphone told her in the car immediately after they drove away from the house. The conflicting evidence raised a question of fact for the jury and does not undermine defendant's conviction for this offense. Moreover, Oly's own trial testimony demonstrated her realization that defendant's threats and violence were designed to prevent Mr. Phetchamphone from calling the police. She testified that as she tried to leave the house, defendant said he was worried that they would call the police. Oly testified that she assured defendant that they were just going to a motel, and she made those statements so he would not stop them from leaving.

There is overwhelming evidence that defendant used force or the threat of force to dissuade Mr. Phetchamphone from calling the police to report that defendant had assaulted and threatened him.

### III. Admission of defendant's prior conviction

Defendant contends the court improperly admitted evidence of his prior conviction for attempted murder. Defendant asserts the evidence was inadmissible because he did not testify and was not subject to impeachment. Defendant argues the prior conviction constituted inadmissible propensity evidence in violation of Evidence Code section 1101, that it was irrelevant and prejudicial pursuant to Evidence Code section 352, and requires reversal

of his felony convictions for criminal threats and dissuading a witness.  Defendant asserts the erroneous admission of this evidence requires reversal of both count I, criminal threats, and count II, dissuading a witness by force or threat.

## A.  Evidence Code sections 1101 and 352

"Evidence Code section 1101, subdivision (a), generally prohibits the admission of a criminal act against a criminal defendant 'when offered to prove his or her conduct on a specified occasion.'  Subdivision (b), however, provides that such evidence is admissible 'when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity…).'  To be admissible, such evidence ' "must not contravene other policies limiting admission, such as those contained in Evidence Code section 352." [Citation.]'  [Citation.]  Under Evidence Code section 352, the probative value of the proffered evidence must not be substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.  [Citations.]"  (*People v. Harrison* (2005) 35 Cal.4th 208, 229.)

"We review for abuse of discretion a trial court's rulings on relevance and admission or exclusion of evidence under Evidence Code sections 1101 and 352.  [Citations.]"  (*People v. Harrison*, *supra*, 35 Cal.4th at p. 230.)

As we explained in issue I, *ante*, section 422 requires the prosecution to prove the victim was in "sustained fear," and "[t]he victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear.  [Citation.]"  (*People v Allen*, *supra*, 33 Cal.App.4th at p. 1156.)  As we will explain, a series of cases have held that evidence of a defendant's prior criminal and/or violent acts are admissible pursuant to Evidence Code section 1101, subdivision (b), when relevant to prove an element of an offense, particularly a violation of section 422.  (*People v. Garrett* (1994) 30 Cal.App.4th 962, 966-968 (*Garrett*); *People v. McCray* (1997) 58 Cal.App.4th 159, 172 (*McCray*); *People v. Butler* (2000) 85 Cal.App.4th 745, 754-755; *People v. Zavala* (2005) 130 Cal.App.4th 758,

770.) The trial court relied on these cases when it allowed the jury to hear evidence about defendant's prior conviction for attempted murder.

With this background in mind, we turn to the trial court's ruling and instructions on this issue.

## B. The prosecution's motion in limine

In 2002, defendant was convicted in Minnesota of attempted second degree murder. In the instant case, the second amended information alleged defendant suffered a prior strike conviction and a prior serious felony enhancement based on that Minnesota conviction.[8]

During the motions in limine, the prosecutor moved to admit defendant's prior conviction for attempted murder. The prosecutor argued the prior conviction was relevant to the charged offenses because Mr. Phetchamphone, the victim, knew about it, and the victim's knowledge "of the defendant's violent past" was part of the surrounding circumstances "as to how he perceived the threat, and how reasonable that threat was."

The prosecutor noted that according to the police report, Mr. Phetchamphone told the officers that defendant threatened him; he knew defendant was on parole for murder; and he was scared of defendant because of the prior conviction and defendant's violent outbursts. The prosecutor argued the prior conviction was probative about the reasonableness of the victim's fear.

Defense counsel objected and argued the prior conviction was extremely prejudicial and would create an extreme bias against defendant. Counsel argued that if the jury heard about the prior conviction, it would "automatically" think defendant was a violent and threatening person and convict him of the charges.

## C. The court's ruling

After reviewing briefing from the parties, the court held defendant's prior conviction for attempted murder was admissible. The court acknowledged the potential prejudice from

___

[8] The jury later found the prior conviction allegation true, and the court found the Minnesota conviction constituted a strike.

16.

the prior conviction was "rather evident and extreme," but found the evidence was probative of the victim's state of mind to prove the elements of the charged offenses.

> "[O]n balance, I believe that the case law would allow for the introduction of the evidence. The state of mind of the victim is germane, the offer of proof that's been made is that the victim knew about the conviction, which is pretty understandable, since the victim is the father of the defendant[,] that he would know. And in reading those cases, comparing them to the elements of [section] 422, and there were a number of stalking cases as well which were similar, but not exactly the same. It appears that this evidence would be admissible for the purpose of showing the elements … of the defendant intending that his statement be understood as a threat, the element is, 'it is so clear, immediate, unconditional, specific, there was a serious intention that immediate prospect that the … threat would be carried out.' And probably really most germane, that the threat actually caused … the victim[] to be in sustained fear for his own safety and the safety of his family, and that the fear was reasonable under the circumstances.…"

The court again acknowledged defendant's prejudice argument, but cited the prosecution's offer of proof that the victim knew about defendant's prior conviction. The court found the victim's state of mind was "very germane and important to the element of the offenses charged, and it's his knowledge of the defendant's prior conviction and willingness, apparently at least on … one prior occasion, to engage in a violent or attempted violent act … [was] highly probative on that issue in a way that it would not be, for example, if the victim was a third party who didn't know about the conviction.…" "And I think weighing the factors on balance, I think that evidence has to be admitted for that purpose." The court intended to instruct the jury on the limited admissibility of the evidence, that it could not consider the evidence to prove defendant's propensity to commit the acts.

Defense counsel renewed his objections and argued there was no connection between defendant's prior conviction and the charged offenses, since defendant did not refer to his prior conduct at the time he allegedly threatened Mr. Phetchamphone. The court found that while there was no express tie, there was still an "implicit" link because the victim was defendant's father, and he knew about the prior conviction.

17.

Defense counsel asked the court to sanitize the prior conviction to reduce the prejudice, so the jury would only hear he was convicted of a "violent crime" rather than "attempted murder." The prosecutor objected and argued the specific nature of the offense was relevant since defendant threatened to kill Mr. Phetchamphone, and the nature of the prior conviction was highly relevant to the victim's perception of the threat.

The court denied defense counsel's request to sanitize the prior conviction. The court again acknowledged the prior conviction was "incredibly prejudicial," but it was also "incredibly probative" as to the elements of the charged offenses and the victim's state of mind.

### D. Trial evidence and instructions

At trial, during direct examination, Mr. Phetchamphone testified that he was afraid of defendant during the incident at his house when defendant punched him, and explained: "Well, what if he kill? Because we couldn't understand each other."

> "[THE PROSECUTOR]: Did you also tell the officers that part of the reason you were afraid during this incident was *because you knew your son had previously been convicted for attempted murder*?
>
> "[DEFENSE COUNSEL]: Objection, leading.
>
> "THE COURT: Overruled. You may answer.
>
> "[THE WITNESS]: *Yes*." (Italics added.)

Immediately after Mr. Phetchamphone's answer, the court instructed the jury as follows:

> "You are not permitted to use the fact that [defendant] was convicted of second degree attempted murder to show that he behaved in conformity with that character on a particular occasion, or had has [*sic*] a propensity or disposition to engage in a certain type of conduct. *Rather, [defendant's] prior conviction can only be used to help explain [the victim's] state of mind during the incident that occurred on October 23, 2011*." (Italics added.)

On further questioning, the prosecutor asked Mr. Phetchamphone about defendant's prior conviction:

"Q. … The attempted murder conviction of your son that you were aware of, do you know what state that took place in?

"A. Regarding to that, I do not know. *All I know is he was in prison.* You can ask him yourself." (Italics added.)

In the instructional phase, the court again advised the jury on the limited admissibility of this evidence:

"During trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and no other. For example, you are not permitted to use the fact that [defendant] was convicted of second degree attempted murder to show that he behaved in conformity with that character on a particular occasion, or had a propensity or a disposition to engage in a certain type of conduct. *Rather, [defendant's] prior conviction can only be used to help explain [the victim's] state of mind during the incident that occurred on October 23, 2011.*" (Italics added.)

In closing argument, the prosecutor briefly referred to defendant's prior conviction when she discussed the elements of criminal threats, and reminded the jury on the limited admissibility of the evidence.

"And when we spoke earlier in jury instructions, we went over and over and over again about the fact that the defendant has previously been convicted of attempted murder. We went over the inappropriate uses for that conviction or that fact. That you can not use it to show that he's a violent person by nature just because he had that conviction, and that's absolutely the case, you can not. *However, that does not mean in this case that that fact known by the victim is not significant. It's huge here. Because [the victim's] fear had to be reasonable.*

"… And the victim's fear was reasonable not only because of those circumstances that I [have already] described, or because he was physically assaulted by the defendant, there at the scene, *but because the victim at the time of all of this knew that the defendant had a previous conviction for attempted murder, so this is not necessarily something that the victim would see as an empty threat. This is a unique situation. The victim, when all this occurred, knew that the defendant had previously tried to kill another person. So, his fear for his safety was reasonable.*" (Italics added.)

The prosecutor argued the instant case was not simply a family dispute, but it was "uniquely different because of the victim's knowledge of the defendant's background," the

19.

intensity of the argument, the explicit nature of the threats, and the physical attack on the victim.

### E.  Section 422 and *Garrett*

In section I, *ante*, we set forth the elements required to prove a violation of section 422.  We now turn to the series of cases which have held that a defendant's prior criminal acts are admissible when relevant to the elements of the charged offenses, particularly a violation of section 422.

In *Garrett*, *supra*, 30 Cal.App.4th 962, the defendant was convicted of making a criminal threat in violation of section 422.  He called his wife from a tattoo parlor around 9:00 p.m.  His wife was angry because it was payday, the defendant had not come home, and the family was out of food.  His wife expressed her anger and hung up.  (*Garrett*, *supra*, at p. 965.)  The defendant called his wife back and "unleashed a barrage of obscenities, followed by a threat to beat her and concluding with a statement that:  '[Y]ou better sit here on this … phone and listen to me, because when I get off this phone, I'm coming there to put a bullet in your head.' "  (*Id*. at p. 965.)  At trial, the court admitted evidence that the defendant's wife knew about his prior conviction for manslaughter, and that he had beaten her on prior occasions.  (*Id*. at p. 966.)

*Garrett* held the trial court did not abuse its discretion when it admitted the evidence of the defendant's prior manslaughter conviction and prior beatings of his wife.  *Garrett* held the prior acts were not admitted for the inappropriate purpose of showing the defendant's disposition to commit the charged offense.  Instead, the evidence was admissible "for the purpose of establishing crucial elements" of the charged offense.  (*Garrett*, *supra*, 30 Cal.App.4th at pp. 967-968.)

> "[Section 422] incorporates a mental element on the part of not only the defendant but the victim as well.  In order to establish a section 422 violation, the prosecution must establish (1) that the defendant had the specific intent that his statement would be taken as a threat (whether or not he actually intended to carry the threat out), and (2) that the victim was in a state of 'sustained fear.'  The prosecution must additionally show that the nature of the threat, both on

20.

'its face and under the circumstances in which it is made,' was such as to convey to the victim an immediate prospect of execution of the threat and to render the victim's fear reasonable." (*Id.* at pp. 966-967.)

*Garrett* held the prior acts were admissible to prove these elements of the offense:

"Clearly, in the case at bar, the fact that Wife knew that [the defendant] had killed a man with a gun in the past and that appellant was aware that she knew, inasmuch as he was the one to apprise Wife of this fact, is *extremely relevant and probative in terms of establishing these elements* – i.e., that [the defendant] had the specific intent that his statement that he would 'put a bullet in [Wife's] head,' would be taken as a threat; that upon hearing the statement, Wife was in a state of sustained fear; and that the nature of the statement was such as to convey an immediate prospect of execution of the threat and to render Wife's fear reasonable. In the same way, evidence that Wife herself had been a past victim of appellant's violence, was thoroughly germane to these issues as well." (*Garrett*, *supra*, 40 Cal.App.4th at p. 967, italics added.)

*Garrett* explained why the evidence was not prejudicial:

"Furthermore, upon the facts of this case, it cannot be said that the probative value of the evidence is outweighed by its prejudicial effect. *Seldom will evidence of a defendant's prior criminal conduct be ruled inadmissible when it is the primary basis for establishing a crucial element of the charged offense.*" (*Garrett*, *supra*, 40 Cal.App.4th at p. 967, italics added; see also *People v. Zavala*, *supra*, 130 Cal.App.4th at p. 770 [*Garrett* "directly controlling" on the admissibility of the defendant's prior acts to prove relevant elements of the charged offense].)

These issues were also addressed in *McCray*, *supra*, 58 Cal.App.4th 159 where the defendant was charged with committing multiple offenses against his former wife, including criminal threats (§ 422); aggravated trespass (§ 601, subd. (a)(1)); stalking (§ 646.9, subd. (a)); damaging a telephone line (§ 591); and making annoying telephone calls (§ 653m, subd. (a)). (*McCray*, *supra*, at p. 162.) *McCray* held the trial court properly admitted evidence of the defendant's prior acts of violence against the victim to prove elements of the charged offenses, and his prior acts did not constitute inadmissible propensity evidence. (*Id.* at pp. 171-172.)

"The crimes with which [the defendant] was charged required proof of his intent to place [the victim] in fear for her safety or that of her family and, in the case of the aggravated trespass charge, to carry out a threat to inflict serious

21.

bodily injury. (§§ 646.9, subd. (a), 422; 601, subd. (a)(1).) *The evidence of past violence perpetrated by [the defendant] against [the victim] was clearly relevant on these issues.*" (*Id*. at p. 172, italics added.)

*McCray* further held:

"[W]hile the past incidents involved actual violence while the present offenses involved at most threats of violence, the evidence that [the defendant] had been violent toward [the victim] in the past was plainly relevant to the jury's determination whether appellant intended to cause [the victim] fear …, as it tended to demonstrate both that [the defendant] was capable of inflicting physical harm upon [victim] and that [the victim] would have reason to fear his threats might be carried out. [Citation.]

"The offenses with which [the defendant] was charged also required the prosecution to prove that [the victim] was reasonably caused to be in fear for her safety by appellant's threats (§ 422) or that the threats would cause a reasonable person to suffer substantial emotional distress (§ 646.9, subd. (a)). The evidence of past domestic abuse was highly relevant and probative on these issues; indeed, *it is difficult to imagine how the jury could have properly assessed [the victim's] response to [the defendant's] conduct without knowledge of these past incidents.…*" (*McCray*, *supra*, 58 Cal.App.4th at pp. 172-173, italics added.)[9]

## F. Analysis

Defendant argues the court abused its discretion when it admitted evidence of his prior conviction for attempted murder because it constituted inadmissible character evidence and was extremely prejudicial. To the contrary, the evidence was relevant and admissible to prove the elements of the charged offense of criminal threats in violation of section 422. Indeed, this case is very similar to *Garrett*, *supra*, 30 Cal.App.4th 962 where the court found the prior conviction evidence was admissible, relevant, and did not violate either Evidence Code sections 1101 or 342. In both *Garrett* and this case, the defendants were charged with

_____

[9] *McCray*'s holding was based on the admissibility of defendant's prior acts pursuant to Evidence Code section 1101, subdivision (b). (*McCray*, *supra*, 58 Cal.App.4th at p. 171.) *McCray* did not discuss the possible application of Evidence Code sections 1108 and 1109, which were enacted in 1995 and permit the admission of prior acts as propensity evidence in sexual offense and domestic violence prosecutions. (See, e.g., *People v. Soto* (1998) 64 Cal.App.4th 966, 979-980, 983.)

violating section 422; the prosecution had to prove mental elements as to defendants and the victims; defendant in this case had a prior conviction for attempted murder, while the defendant in *Garrett* had a prior conviction for manslaughter; the victims in both cases were related to the defendants and knew about the defendants' prior convictions; and their knowledge of the defendants' prior homicide convictions was extremely relevant and probative to establish the elements of violating section 422.

Defendant acknowledges *Garrett*, *supra*, 30 Cal.App.4th 962, but contends the instant case is distinguishable from *Garrett* for several reasons. First, he cites to the evidence admitted to prove his prior conviction constituted a strike, and points out that he was convicted as an aider and abettor of attempted murder, and he committed the prior offense for the benefit of a criminal street gang instead of personal reasons. Defendant asserts that in contrast, the defendant in *Garrett* was convicted as a direct perpetrator of manslaughter, and his prior conviction was thus more probative of the disputed issues. This argument is unavailing. *Garrett* did not distinguish between the nature of the perpetrator's culpability or the reasons he committed the prior offense. Instead, it held that evidence of a defendant's prior criminal conduct would be relevant, probative, and admissible "when it is the primary basis for establishing a crucial element of the charged offense," given the victim's knowledge of that prior conviction. (*Garrett*, *supra*, 30 Cal.App.4th at p. 967.)

Next, defendant contends *Garrett*'s reasoning is inapplicable in this case because his prior conviction did not have a nexus in fact or law to the current charges. Defendant notes that Mr. Phetchamphone, his father, was the victim of the charged offenses, but he was not the victim of the prior conviction. In contrast, defendant points out that the victims in *Garrett* and *McCray* were also the victims of the prior bad acts committed by the defendants in those cases.

Defendant's argument on this point characterizes the facts in *McCray*, *supra*, 58 Cal.App.4th 159, where the defendant in that case was convicted of threatening his former wife. In *McCray*, the defendant's former wife was the victim of both his prior beatings and

the charged offenses, and the court held the fact that the defendant "been violent toward [the victim] in the past was plainly relevant to the jury's determination whether appellant intended to cause [the victim] fear .…" (*Id.* at pp. 172-173.)

In *Garrett*, *supra*, 30 Cal.App.4th 962, however, the court admitted two different types of prior acts: the defendant's prior beatings of his wife, and his prior conviction for manslaughter. *Garrett*'s holding was not limited to the victim's involvement in both prior acts since his wife, the victim of the charged offenses, was obviously not the victim of the manslaughter conviction. In addition, *Garrett* does not discuss the underlying facts of the prior manslaughter conviction, except for the critical point that the victim in that case knew the defendant had been convicted for shooting and killing a man. Such facts were obviously not identical to the charged offenses based on *Garrett*'s domestic violence situation. More importantly, however, the wife's knowledge of the defendant's prior violence existed prior to his threats against her, and he did not refer to his prior manslaughter conviction when he threatened her during the telephone conversation. *Garrett* thus concluded the wife's knowledge of the defendant's prior manslaughter conviction was relevant and probative to her sustained fear resulting from the defendant's telephonic threats against her. (*Id.* at pp. 966-967.) The same reasoning applies in the instant case: Mr. Phetchamphone knew that defendant, his son, had been convicted of attempted murder and had been in prison, and these facts contributed to his fear of defendant's threats against him.

Next, defendant asserts that his prior conviction for attempted murder was not relevant or admissible because the victim, Mr. Phetchamphone, testified that he did not know the facts surrounding the prior offense, and only knew that defendant was in prison. During the hearing on the admissibility of defendant's prior conviction, the court relied on the prosecution's offer of proof that according to the police report, Mr. Phetchamphone told the officers that defendant threatened him, he knew defendant was on parole for murder, and he was scared of defendant because of the prior conviction and defendant's violent outbursts.

While defense counsel objected to the admission of this evidence, he did not object to or dispute the accuracy of the prosecutor's recitation of this offer of proof from police report.

As set forth, *ante*, the trial court made lengthy and careful findings when it determined that defendant's prior conviction for attempted murder was admissible. The court's findings were based on its analysis of *Garrett, supra*, 30 Cal.App.4th 962 and *McCray*, *supra*, 58 Cal.App.4th 159, and the prosecution's offer of proof in this case. The court particularly cited the evidence that the victim's state of mind was "very germane and important to the element of the offenses charged, and it's his knowledge of the defendant's prior conviction and willingness, apparently at least on … one prior occasion, to engage in a violent or attempted violent act … [was] highly probative on that issue in a way that it would not be, for example, if the victim was a third party who didn't know about the conviction…."

Defendant contends that contrary to the prosecution's offer of proof, Mr. Phetchamphone testified at trial that he only knew that defendant had been in prison, and this knowledge thus rendered the actual nature of his prior conviction as irrelevant and prejudicial. Indeed, defendant asked the court to sanitize his prior conviction so the jury only heard that he had been convicted of a violent felony. Defendant thus contends that the court abused its discretion when it declined to sanitize the felony, in light of Mr. Phetchamphone's testimony that he only knew defendant had been in prison.

While this appears to be a crucial argument against admissibility, a closer examination of the entirety of Mr. Phetchamphone's trial testimony refutes the basic assumption behind defendant's argument. Defendant relies on the following exchange between the prosecutor and Mr. Phetchamphone as evidence that Mr. Phetchamphone did not know the underlying facts of the prior conviction:

"Q.   … The attempted murder conviction of your son that you were aware of, do you know what state that took place in?

"A.   Regarding to that, I do not know. *All I know is he was in prison.* You can ask him yourself." (Italics added.)

25.

Immediately before this exchange, however, the prosecutor asked Mr. Phetchamphone about his prior statement to the police:

> "[THE PROSECUTOR]:   Did you also tell the officers that part of the reason you were afraid during this incident was *because you knew your son had previously been convicted for attempted murder*?
>
> "[DEFENSE COUNSEL]: Objection, leading.
>
> "THE COURT:       Overruled.  You may answer.
>
> "[THE WITNESS]:            *Yes*."  (Italics added.)

Thus, a review of the entirety of Mr. Phetchamphone's trial testimony reveals that his knowledge of his son's past was not limited to the fact that he had been in prison, but he knew that defendant had been convicted of attempted murder, and testified consistent with the offer of proof, that this knowledge contributed to his fear of defendant's threats to kill him.

As *Garrett* explained:  "Seldom will evidence of a defendant's prior criminal conduct be ruled inadmissible when it is the primary basis for establishing a crucial element of the charged offense." (*Garrett*, *supra*, 30 Cal.App.4th at p. 967.)  The trial court did not abuse its discretion when it admitted evidence that Mr. Phetchamphone knew about defendant's prior conviction for attempted murder, and that he had been in prison.  As in *Garrett*, Mr. Phetchamphone's knowledge of defendant's violent criminal past was relevant and probative of whether defendant had the specific intent that his threats to kill his father would be taken as serious; his father was in a state of sustained fear upon hearing the threats; and the nature of the threats "was such as to convey an immediate prospect of execution of the threat and to render [the victim's] fear reasonable." (*Ibid*.)  While the evidence was also damaging to the defendant, that does not make it unduly prejudicial within the meaning of Evidence Code section 352.  (*People v. Zapien* (1993) 4 Cal.4th 929, 958.)

## G. Count II

Finally, defendant contends that even if his prior conviction for attempted murder was admissible pursuant to *Garrett*, *supra*, 30 Cal.App.4th 962 as to count I, criminal threats, the

evidence was inadmissible and prejudicial as to count II, dissuading a witness, because it was not relevant to any of the disputed elements of that charge. The People respond that the jury received the limiting instruction that it could only consider defendant's prior conviction for the disputed issue of the victim's state of mind, and the victim's state of mind was not an element of dissuading a witness.

As we explained in section II, *ante*, to prove the offense of dissuading a witness in violation of section 136.1, subdivision (b)(1), the prosecution was required to prove defendant had the specific intent to (1) attempt to prevent or dissuade a person (2) who is a victim or witness to a crime (3) from making any report of their victimization to any peace officer or other designated officials. (*People v. Upsher*, *supra*, 155 Cal.App.4th at p. 1320.) The prosecution was also required to prove "the defendant's acts or statements [were] intended to affect or influence a potential witness's or victim's testimony or acts …." (*People v. McDaniel, supra,* 22 Cal.App.4th at p. 284.) In addition, the prosecution was required to prove pursuant to section 136.1, subdivision (c)(1) that defendant committed the acts of dissuasion "knowingly and maliciously," and the act was "accompanied by force or by *an express or implied threat of force or violence*, upon a witness or victim or any third person or the property of any victim, witness, or any third person." (§ 136.1, subd. (c)(1), italics added; *People v. Upsher*, *supra*, 155 Cal.App.4th at p. 1320.)

As noted by the People, the jury received the limiting instruction twice, about its consideration of defendant's prior conviction: that it could not rely on that evidence "to show that he behaved in conformity with that character on a particular occasion, or had a propensity or a disposition to engage in a certain type of conduct. *Rather, [defendant's] prior conviction can only be used to help explain [the victim's] state of mind during the incident that occurred on October 23, 2011.*" (Italics added.) The victim's state of mind was not a disputed issue or required element to prove a violation of section 136.1, subdivisions (b)(1) and (c)(1). Instead, the elements focused on the defendant's state of mind and specific intent to dissuade a witness by force or threat. We presume the jury followed the limiting instruction in this case.

"Jurors are routinely instructed to make … fine distinctions concerning the purposes for which evidence may be considered, and we ordinarily presume they are able to understand and follow such instructions.  [Citations.]  Indeed, we and others have described the presumption that jurors understand and follow instructions as '[t]he crucial assumption underlying our constitutional system of trial by jury.'  [Citations.]  We see no reason to abandon the presumption in this case, where the relevant instructional language seems clear and easy to understand."  (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.)

## **DISPOSITION**

The judgment is affirmed.

_____

Poochigian, Acting P.J.

WE CONCUR:


_____

Detjen, J.


_____

Franson, J.

28.