Filed 11/18/13  P. v. Hardiman CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> MORRIS ERIC HARDIMAN, <br><br>     Defendant and Appellant. | D062974 <br><br><br> (Super. Ct. No. SCE314530) |

APPEAL from a judgment of the Superior Court of San Diego County, Allan J. Preckel, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillett and Julie L. Garland, Assistant Attorneys General, Peter Quon, Jr. and Raquel M. Gonzalez, Deputy Attorneys General for the Plaintiff and Respondent.

A jury convicted Morris Eric Hardiman of mayhem (Pen. Code,[1] § 203; count 1); corporal injury to a spouse resulting in a traumatic condition (§ 273.5; counts 2 and 4); making a criminal threat (§ 422; count 3); child endangerment (§ 273a, subd. (b); count 5); and attempting to prevent a victim from reporting a crime (§ 136.1, subd. (b)(1); count 7). It found true an allegation that Hardiman personally inflicted great bodily injury upon his spouse. (§§ 12022.7, subd. (e), 1192.7, subd. (c)(8).) After waiving his right to a jury trial on his priors, Hardiman admitted a prior serious felony conviction. The court sentenced Hardiman to state prison for 17 years 8 months.

Hardiman contends there was insufficient evidence to support his conviction for making a criminal threat. He further contends the court erred by failing to instruct the jury sua sponte on the lesser included offense of attempted criminal threat. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

Hardiman and his wife, A.H., did not live together but Hardiman often stayed at her apartment where she lived with her three children, including her daughter S.H., whom Hardiman fathered. Hardiman and A.H. frequently engaged in domestic disputes. Hardiman began hitting A.H. before they were married, and the violence worsened when A.H. became pregnant with S.H. Hardiman accused A.H. of being unfaithful and disputed the child's paternity. Thinking another man was in the house, Hardiman would

---

1    All statutory references are to the Penal Code.

2

arrive unannounced and kick in A.H.'s door or break her windows to enter her home. He also took A.H.'s telephones to prevent her from calling police, prompting her to hide extra telephones in her home. A.H. repeatedly told him she was not cheating on him. In June 2011, when she was seven months pregnant, A.H. called 911 to report Hardiman had broken into her apartment and poured water on her television.

In August 2011, five days after S.H.'s birth by cesarean section, Hardiman and A.H. argued about S.H.'s paternity. A.H. went on the patio, believing he would not hit her in public. Hardiman followed her outside and pushed her in the stomach, causing her great pain. A.H. returned inside the apartment. Hardiman asked for a kiss, bit her lip, and ripped it off. A.H. called 911 and later received surgery at the hospital. A.H. did not initially identify Hardiman to police or hospital personnel as her attacker but instead gave hospital personnel the made-up name, "Eric White." She eventually told police, "[Hardiman] came in like he was going to give her a kiss, kissed her gently on both cheeks, and then came in like he was going to kiss her on the lips, so she responded and at that time he took his teeth, grabbed her lip, ripped it from her face[,] chewed it and then spit it out before fleeing." A.H. has scars and permanent numbness from the bite. A few days after that incident, Hardiman told A.H. "mean things" in reference to the bite like, "That is what you get for cheating. You deserve[] it."

On September 2, 2011, Hardiman argued with A.H. at her apartment, took her phone, and drove away in her car. A.H. thought the arguments were worsening and Hardiman "was getting more crazier." Scared, A.H. asked her father and one of her friends to come to her apartment. A.H. telephoned Hardiman several times to ask for her

3

belongings, but he initially did not answer. He eventually answered, yelled profanities, and accused her of cheating on him. Hardiman told A.H. a couple of times, "I am going to kill you." A.H.'s friend overheard the conversations, and testified that Hardiman threatened A.H. multiple times, saying in part, "don't have me come over there[,] I will shoot everybody in the house." A.H. believed him capable of carrying out the threats, stating, "after he bit my lip the way he did, I didn't know what he would be capable of doing next." A.H. had her father speak to Hardiman on the phone, but Hardiman did not believe he was her father, accused him of being one of A.H.'s lovers, and threatened to kill him. A.H. had asked her father for a gun because she was scared of Hardiman, and he gave her one that night. After, A.H.'s father and friend left the apartment late that night, Hardiman continued calling A.H.'s friend's phone, and when the boyfriend of A.H.'s friend answered that phone, Hardiman threatened to kill him.

On September 5, 2011, Hardiman returned to A.H.'s apartment. They argued, and while A.H. held their daughter, Hardiman hit A.H. in the head with his fist. Hardiman briefly left, returned, and yelled at A.H. She got her father's gun and pointed it at Hardiman. Hardiman told A.H. to shoot him, and A.H. continued to ask him to leave. Hardiman threatened to kill her, and then left. A.H. could not call police because Hardiman had disabled her telephone connection. Instead, Hardiman called police, saying A.H. had a gun. Police arrested her. She told police about Hardiman's previous domestic violence and said she "was sure he was going to kill her." Hardiman was then arrested.

4

At Hardiman's trial, the court instructed the jury with CALCRIM No. 1300 regarding criminal threats: "To prove that the defendant is guilty of this crime, the People must prove that . . . [t]he threat actually caused [A.H.] to be in sustained fear for her own safety." During deliberations the jurors asked a series of questions regarding this instruction. First, the jurors asked: "Please define and clarify . . . 'a <u>serious intention</u> and the <u>immediate prospect</u> that the threat would be carried out.' " The court replied, "The gravamen of the crime of making a terrorist threat rests upon the effect that the threat has upon the victim. . . . [T]he threat, as heard and understood by [A.H.], must have caused her to believe that the defendant was serious in making the threat, and must have caused her to believe that the threat would be carried out without undue delay—and thus caused her to reasonably be in sustained fear for her safety." Second, the jurors asked: "Are we to consider all of the evidence in the entire case when deliberating the defendant's guilt or innocense [*sic*] in Count 3?" The court replied, "Yes." Third, the jurors asked: "Must we consider [A.H.'s] mental state of mind . . . or <u>just</u> her actions subsequent to the call? (The threatening phone call[.])" Fourth, the jurors asked: "Is [A.H.'s] belief that the 'defendant was serious in making the threat' to be evaluated solely on her <u>immediate</u> response to the call[?]" The court responded, "[Y]ou should fairly consider the totality of the evidence and circumstances, including [A.H.'s] state of mind and actions subsequent to the call."

5

*Defense Case*

Hardiman's mother testified that during the summer of 2011, he was living with A.H. in her apartment and had a key to it. At the hospital, A.H. admitted telling the doctor that someone named "Eric White" had bitten her lip.

DISCUSSION

I. *Substantial Evidence Supports Hardiman's Conviction for Making a Criminal Threat*

Hardiman contends there was insufficient evidence to show A.H. was in sustained fear for her own safety to support his conviction for making a criminal threat.[2] He argues his statements to A.H. were merely "emotional outbursts." Hardiman also contends that he never acted on his threats and if A.H. were in sustained fear, it would have been unreasonable for her to allow her friend or father to leave her apartment that night. In addition, he asserts A.H. called him over twenty times, including seven or eight times after he made the threats. Hardiman points out he also had threatened the boyfriend of A.H.'s friend, but did not act on it. He contends we should reduce his conviction to attempted criminal threat.

_____

[2] The elements of making a criminal threat are: " '(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat . . . was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.' " (*In re George T.* (2004) 33 Cal.4th 620, 630.)

6

In evaluating a sufficiency of the evidence challenge, the reviewing court determines " ' "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*People v. Virgil* (2011) 51 Cal.4th 1210, 1263.) The evidence in the record must be " ' "reasonable, credible and of solid value." ' " (*Ibid.*) In addition, " ' "the appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*Ibid.*) " ' "[I]t is the jury, not the appellate court[,] that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " ' " (*Ibid.*)

The element of sustained fear "requires proof of a mental element in the victim" (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156) and has a subjective and an objective component. (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140.) "A victim must actually be in sustained fear, and the sustained fear must also be reasonable under the circumstances." (*Ibid.*) The communication at issue "must be sufficient 'on its face and under the circumstances in which it is made' to constitute a criminal threat." (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 860.) The jury must consider the communication and the surrounding circumstances together, including a prior relationship between the defendant and the victim. (*People v. Wilson* (2010) 186 Cal.App.4th 789, 814; *People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340.) In evaluating whether the defendant made a criminal

threat, the trier of fact may consider defendant's "mannerisms, affect, and actions involved in making the threat as well as subsequent actions taken by the defendant." (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1013.)

Evidence that Hardiman had previously inflicted violence on A.H. is relevant and probative in proving the element of sustained fear. (*People v. Garrett* (1994) 30 Cal.App.4th 962, 967.) Only five days after S.H.'s birth, Hardiman pushed A.H. in the stomach and bit off her lower lip. Hardiman repeatedly broke into A.H.'s apartment and accused her of infidelity. He also repeatedly took A.H.'s telephones, thus preventing her from calling police. A.H. testified she was scared Hardiman would carry out his threats to kill her. A.H's. father gave her a gun to protect herself from Hardiman. Hardiman obviously intended to frighten A.H. and amply succeeded. We conclude that on this record, A.H.'s fear was objectively reasonable. The facts of this case are more than sufficient to show that, both subjectively and objectively, A.H. was in "sustained fear" for purposes of section 422. We therefore conclude that substantial evidence supports Hardiman's conviction. Accordingly, there is no basis for reducing Hardiman's conviction to attempted criminal threat.

Hardiman contends the jurors' questions regarding the element of sustained fear prove they were concerned that there was not enough evidence to support that element of the crime. But counsel discussed and agreed on the court's responses to the jurors' questions, and Hardiman does not claim the court's responses were inadequate. We presume the jurors followed the instructions. (*People v. Yeoman* (2003) 31 Cal.4th 93,

8

139.) The jurors' questions reasonably show they deliberated carefully and considered all the evidence in convicting Hardiman of making a criminal threat.

II. *The Court Did Not Err by Failing to Instruct on the Lesser Included Offense of Attempted Criminal Threat*

Hardiman contends the court erred in failing to instruct sua sponte on the lesser included offense of attempted criminal threat, and such error was prejudicial. He reiterates his claim that there was insufficient evidence to find A.H. was in sustained fear, and therefore he is at most guilty of attempting to make a criminal threat.

" '[A] defendant has a constitutional right to have the jury determine every material issue presented by the evidence . . . .' [Citations.] ' "To protect this right and the broader interest of safeguarding the jury's function of ascertaining the truth, a trial court must instruct on lesser included offenses, even in the absence of a request, whenever there is substantial evidence raising a question as to whether all of the elements of the charged offense are present." ' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1215.) " ' "Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." ' " (*Ibid.*) The reviewing court applies the independent judgment standard of review to the trial court's failure to instruct on a lesser included offense. (*People v. Waidla* (2000) 22 Cal.4th 690, 739.)

Attempted criminal threat is a lesser included offense of criminal threat. (*People v. Toledo* (2001) 26 Cal.4th 221, 230.) "[I]f a defendant, . . . acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in

9

sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat." (*Id.* at p. 231.) In these situations, "only a fortuity, not intended by the defendant, has prevented the defendant from perpetrating the completed offense of criminal threat itself." (*Ibid.*) As noted, there is substantial evidence, namely, A.H.'s own testimony, that A.H. actually was in sustained fear after Hardiman's threats. Therefore, the criminal threats were carried out, and the trial court had no basis to instruct the jury regarding an attempt.

## DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.