Filed 8/7/13  P. v. Ochoa CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>FREDDY N. OCHOA,<br><br>  Defendant and Appellant. | 2d Crim. No. B241804<br>(Super. Ct. No. BA393480-01)<br>(Los Angeles County) |

Freddy N. Ochoa appeals from the judgment following his conviction by jury of misdemeanor battery, a lesser included offense of battery resulting in serious bodily injury.  (Pen. Code, §§ 242, 243, subd. (d).)[1]  The jury also acquitted him of assault by means of force likely to produce great bodily injury.  (§ 245, subd. (a)(4).)  The trial court sentenced him to 180 days in county jail.  Appellant's sole contention on appeal is that the trial court erred by admitting prior crime evidence.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

The Ochoa family owned a five-bedroom house in Los Angeles.  In 2012, appellant lived there with his brothers, Bobby Ochoa, and Danny Ochoa, their 89-year-

---

[1] All statutory references are to the Penal Code unless otherwise stated.

old father, Joe Ochoa, Danny's "common-law" wife, Yvonne Reyes, and several younger family members.

On the evening of January 31, 2012, Reyes, Danny, Bobby and Joe were in the living room. Reyes and Danny were drinking beer. Sometime after 9:00 p.m., appellant entered the living room. He and Danny started arguing about money. Reyes went into the kitchen. Danny joined her there and asked for money. She gave him $20. Danny gave the money to appellant, and continued arguing with him about money.

Reyes approached Danny and appellant and yelled that she wanted her money back. Appellant punched Reyes in the face. She fell backward and hit her head on a cabinet. Her mouth and nose were bleeding. Reyes yelled at appellant to stop, and tried to put a chair between them. Appellant again punched Reyes in the face. She called 911. Reyes went to the emergency room. Her injuries included a cut lip, a swollen nose, and a broken tooth.

Reyes and Danny each had a prior felony conviction of petty theft with a prior conviction. Their respective weights are 160 and 145 pounds. Appellant weighs between 450 and 500 pounds.

*Prior crimes Evidence*

In 2001, Reyes's adult son, Rudy, bought milk at the market. Appellant drank some of that milk. Reyes confronted him because he drank it without paying for it. Appellant went to another room, returned with a screwdriver, and started stabbing Rudy's legs. When Reyes tried to pull him away from Rudy, appellant scratched her with the screwdriver. Rudy's legs were bleeding. Someone called the police, who arrived and arrested appellant.

In 2005, appellant asked Bobby to lend him money. Bobby refused. The next day, Bobby was in the kitchen when appellant entered and started to fight. Thinking that appellant was "playing," Bobby fought back. After the fight, Bobby realized that appellant had poked his neck eight times with "an ice pick," or "an electrical cord as sharp as an ice pick." Bobby weighed about 145 pounds in 2005.

2

In 2009, appellant and Danny were fighting in the driveway. While Danny was on his knees, trying to stand, appellant kicked his ribs several times. Reyes managed to pull appellant away briefly. Danny's rib injuries made it impossible for him to stand. An ambulance transported him to the emergency room.

*Defense Evidence*

Appellant testified that Danny barged into his room at about 8:30 p.m. on January 31, 2012. Danny was drunk and claimed that appellant owed him money. Appellant tried to hide in the bathroom, where he found Reyes trying to "catch a vein" with a syringe and inject heroin. She stabbed appellant's hand with the syringe needle, which angered him because she had Hepatitits C. Appellant tried to leave the house, but Reyes locked the front door and said, "You're not going nowhere until you pay Danny his money." Reyes pulled a knife from her purse and stuck the knuckle of his left index finger.

Appellant went to the kitchen to leave through the back door. While trying to get through the kitchen, appellant "hit Danny[,] and he fell on the floor." Danny was screaming, and appellant picked him up. While Danny was punching appellant, Joe (their elderly father) tried to pull Danny away. Bobby also entered the kitchen. During the struggle, Reyes jumped on appellant's back and "fractured it." He "pushed her hard," with his arm. He "wanted her off." She turned around, slipped, and her mouth hit the counter. Reyes then stood, knife in hand, charged appellant, and said, "You mother fucker. I'm going to kill you." Appellant pushed her away with his hand. He was worried about his father, not himself. He did not punch Reyes.

Appellant admitted he was convicted of assaulting Danny in 2009, "joyriding" in 2003, and receiving stolen property in 1999. During cross examination he testified that in 2009, he had to defend himself because Danny attacked him; that Bobby attacked him 2005, and Reyes attacked him in 2012.

Joe Ochoa testified that on the night of appellant's arrest, Danny was cussing and wanted to fight appellant "over $20 or something." Joe tried to hold Danny to stop his fighting. Danny fell down. As appellant bent over to pick Danny up, Reyes

3

pushed or hit appellant "[r]ight in the back." Danny and Reyes were both "pretty drunk." Appellant hit Reyes with his elbow. Reyes "was stumbling down and hit herself on the counter." When the police arrived, Joe told them that "Danny started the fight."

## DISCUSSION

Appellant contends that the trial court abused its discretion by failing to exclude the prior crimes evidence pursuant to Evidence Code sections 1101, subdivision (b), and 352. We disagree.

"We review for abuse of discretion a trial court's rulings on relevance and admission or exclusion of evidence under Evidence Code sections 1101 and 352. [Citations.]" (*People v. Cole* (2004) 33 Cal.4th 1158, 1195.) Evidence that a defendant committed crimes other than those currently charged is not admissible to prove criminal disposition or bad character. (Evid. Code, § 1101, subd. (a); *People v. Demetrulias* (2006) 39 Cal.4th 1, 14.) Evidence Code section 1101, subdivision ( b), however, provides that prior crimes evidence may be received to prove defendant's motive, identity, intent, the existence of a common plan or design, or the absence of mistake or accident. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393 & fn. 1.) "Other crimes evidence is admissible ""where the proof of defendant's intent is ambiguous, as when he admits the acts and denies the necessary intent because of mistake or accident."' [Citation.]" (*People v. Miller* (2000) 81 Cal.App.4th 1427, 1447-1448.)

Even if evidence of an uncharged crime is admissible under Evidence Code section 1101, subdivision (b), the evidence may be excluded under Evidence Code section 352 if its probative value is substantially outweighed by the probability its admission would unfairly prejudice the defendant, mislead the jury, or confuse the issues. (*People v. Balcom* (1994) 7 Cal.4th 414, 426-427.)

While hearing the motion to exclude the prior crimes evidence, the trial court determined that the defense intended to show that appellant did not hit Reyes, and that she attacked him. The court then ruled that the prior crimes were "relevant," having impliedly found that the defense would argue the charged crimes were accidental or that defendant acted in self defense. It also concluded that the prior crimes evidence was

4

admissible, because its probative value outweighed its prejudicial impact. While discussing jury instructions, the court indicated it would use CALCRIM No. 375 to allow the jury to consider whether defendant acted as "the result of a mistake, accident or [to assess] the reasonableness of . . . a self-defense theory." Defense counsel conceded that the prior crimes evidence might be relevant to show a "lack of accident." During closing argument, counsel repeatedly argued that the prosecution had to prove that appellant "did not act in his own self-defense or defense of his father."

The trial court correctly ruled that the prior crimes evidence was relevant to determine whether appellant acted with the requisite intent, or hit Reyes by accident or while defending himself or another. "Seldom will evidence of a defendant's prior criminal conduct be ruled inadmissible when it is the primary basis for establishing a crucial element of the charged offense." (*People v. Garrett* (1994) 30 Cal.App.4th 962, 967.)

We also reject appellant's related claim that the trial court abused its discretion by admitting the prior crimes evidence because its prejudicial impact outweighed its probative value. (Evid. Code, § 352.) As we have already explained, the prior crimes evidence was relevant to intent. That evidence was not unduly prejudicial, when compared with the charged crimes. In each instance, appellant attacked and injured a family member. While the record does not disclose Rudy's weight, it shows that appellant far outweighed Reyes and prior crime victims Bobby and Danny. Moreover, "[t]he prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." (*People v. Karis* (1988) 46 Cal.3d 612, 638.)

Further, the court instructed the jury that it could consider the prior crimes evidence for the limited purposes of "deciding whether or not the defendant's alleged actions were the result of a mistake or accident[,] or as to the reasonableness of any defense relating to defense of others that the defendant acted with the requisite intent to commit the charged offenses." During closing arguments, the prosecutor and defense counsel reminded jurors that the prior crimes evidence could be considered only for such

5

limited purposes.  The court also instructed the jury that it was not to "conclude from [the prior crimes] evidence that the defendant has a bad character or is disposed to commit crime."  We presume that the jury understood and followed the court's instructions. (*People v. Gray* (2005) 37 Cal.4th 168, 231.)

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P.J.

YEGAN, J.

6

John S. Fisher, Judge

Superior Court County of Los Angeles

_____


Stephen Borgo, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Supervising Deputy Attorney General, Steven E. Mercer, Deputy Attorney General, for Plaintiff and Respondent.