Filed 8/19/14  P. v. Woloszyn CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C072675 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F02300) |
| v. | |
| JOE ZACHARY WOLOSZYN, | |
| Defendant and Appellant. | |

A jury found defendant Joe Zachary Woloszyn guilty of a felony criminal threat against Marilyn Casey, misdemeanor battery against a peace officer, and misdemeanor resisting, delaying or obstructing peace officers.  On appeal, defendant contends the trial court erred by (1) admitting evidence of four prior or other acts; and (2) failing to instruct the jury sua sponte on the lesser included offense of attempted criminal threat.  We affirm the judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged by information with threatening to commit a crime which would result in death or great bodily injury (Pen. Code, § 422[1] – count one), unlawful use of force on a police officer (§ 243, subd. (b) – count two), and resisting an officer (§ 148, subd. (a)(1) – count three). Defendant pleaded not guilty to all counts. Defendant was also charged with, and admitted, two prior convictions that qualified as strikes within the meaning of the "Three Strikes" law (§ 667 et seq.) – robbery (§ 211) and assault with a deadly weapon (§ 245, subd. (a)(1)). The trial court dismissed the strike for assault with a deadly weapon, but declined to strike defendant's other prior strike or to reduce the criminal threat conviction to a misdemeanor. The trial court sentenced defendant to six years in state prison (double the upper term) on count one and 180 days in county jail, concurrent, on counts two and three, and stayed the sentence on count three. Defendant also received presentence credits of 436 days.

*A. Motion in Limine*

The prosecution moved in limine "[t]o introduce prior evidence of Defendant's relationship with victim, and her knowledge of his propensity for violence." Specifically, it sought to admit evidence of: (1) "defendant's gang membership or gang affiliation"; (2) defendant's "recent acquisition of a gun"; (3) a domestic violence incident involving Michelle Granderson, Casey's daughter, in Nevada for which defendant was arrested; and (4) "prior threats in which the defendant told . . . Casey that he was going to come shoot up her house and at least two other prior occasions where the defendant showed up at her house . . . in a hostile and aggressive manner seeking to do harm or seeking to enter her house and do harm to the occupants inside." The prosecution contended it "must be entitled to prove the victim's knowledge of the Defendant's propensity for violence in

---

[1]    Further undesignated statutory references are to the Penal Code.

2

order to show that her fear was reasonable." None of this evidence was to be admitted for the truth of the matter, but because "they play into . . . Casey's fear of the defendant, that [the] fear is reasonable, and that the threat that she received on March 29th . . . was in fact a credible threat . . . ."

Defendant objected to (1) the introduction of defendant's gang affiliation as "back-dooring character evidence"; (2) the introduction of gun ownership because it would cause "a mini trial within our trial"; and (3) the introduction of evidence of unconvicted domestic violence as "back-dooring character evidence showing that [defendant] has a propensity to be violent" and based on Evidence Code section 352 as unduly prejudicial. Defendant agreed (4) "Casey can testify that [defendant] threatened her with the prior acts or prior personal interaction the two of them had, and that should be enough. All this other information is cumulative, it's confusing to the jury, and it creates a lot of side issues."

The trial court found the "evidence shows a necessary element that the threats caused the victim to be in actual and reasonable fear for her own safety and possibly the safety of her daughter." The court explained that if Casey had an "actual and reasonable fear" based on information that defendant (1) is a gang member, (2) has a gun, and (3) his domestic violence against Granderson, that information is "highly relevant evidence" and is "highly, highly probative" to prove elements of the offense; therefore, under Evidence Code section 352 analysis the court found "it is more probative than prejudicial" and "is not being offered for the truth of the matter asserted but only to show Mrs. Casey's state of mind. In other words, her fear and whether her fear was reasonable, whether it was a sustained fear." The trial court added that it would give limiting instructions so the jury was clear the evidence was admitted only "for the nonhearsay purpose of the victim's state of mind."

3

*B. Testimony at Trial*

Casey is a long-time employee of the State of California, who, at the time of the threat, worked for the Department of Developmental Services in downtown Sacramento. Casey was familiar with defendant because he dated Granderson off and on for approximately two years. Casey disapproved of the relationship because defendant was physically violent towards Granderson.

In early March 2012, Granderson texted and called Casey from Nevada for help; Granderson had gone with defendant to celebrate the birthday of his friend. Casey testified that Granderson told her that defendant had "beat her up": she and defendant "were asleep, and she woke up in the middle of the morning . . . and he was on top of her just fighting her, beating her." When Granderson returned to Sacramento, with "a black eye and . . . a large knot right on the top of her forehead," she asked Casey "to help [Granderson] get her things" from the house where she and defendant were living. Defendant was in jail in Nevada because he had been arrested for domestic violence of Granderson.

On March 29, 2012, between 9:00 and 9:30 a.m., Casey was at work when she received a phone call on her cell phone from a phone number she did not know. She answered the call and recognized defendant's voice saying that he and Casey "needs [*sic*] to get together and talk like two adults." His voice was "very aggressive," "demanding," and "loud." She told defendant she did not "have anything to say to him" and "to leave me alone." Defendant started cursing at her and said "that he was about to hurt [Granderson]" because "she had taken some of his things from the house." Casey responded that "we don't have anything of [defendant's], to just go ahead and just leave us alone." Defendant then said, " 'Well, fine, if you don't want to talk to me then I'll just come and kill you, Bitch. I know where you work.' " Casey was "really scared" and "just kept saying, 'Leave me alone, leave me alone.' "

4

Casey hung up and contacted the police; an officer was dispatched at approximately 10:45 a.m., and helped Casey obtain an emergency protective order. It appeared to the officer that Casey was "quite fearful" both for herself and for her daughter. Casey testified she was frightened to leave her workplace that day, because she felt the threat was imminent and that defendant was going to come to her workplace, especially since he knew where she worked and had been there before. The same day Casey posted a message that read "[l]ast time, leave us alone" on defendant's Facebook page in the thread related to nude pictures he posted of Granderson.

Casey testified she was frightened that defendant would come to her work and kill her and that he might hurt Granderson. She felt that both threats were real and serious, and that defendant could carry them out. Casey knew he was in a criminal gang, and he had identified and boasted to Casey about his gang. Shortly before Granderson and defendant went to Nevada, Casey had been told by Granderson and a friend of defendant that defendant had purchased a gun, which made Casey more frightened on this occasion. Also, based on Granderson's injuries earlier that month, Casey felt that defendant "really [was] capable of anything" and it made her very scared.

Previously, most recently in February of 2012, defendant called Casey looking for Granderson, and accused Casey of hiding Granderson. Defendant came to Casey's house; he tried to look through her front window; he beat on the window; he hollered and cursed as he sought Granderson; and he only left when the police forced him to go. Defendant did the same thing in October 2011. In addition to looking in and banging on the front window, he called Casey, yelling at her and threatening to "shoot up" her house when she would tell him she did not know where Granderson was. Casey believed defendant's threats were escalating and that his March 29, 2012 phone call was a further escalation.

Multiple highway patrol officers attempted to serve defendant with the protective order on March 30, 2012. They attempted to contact defendant at his residence, but he

5

was not home. Defendant's roommate, Richard Ward, cooperated with the officers and called defendant, who refused to return home to speak with the officers. Ward gave the officers defendant's phone number, and when they called defendant he said "he knew [the officers] were coming to talk to him; that he felt [the officers] were probably coming to serve him with a restraining order; and that he had just gotten out of jail in Nevada for an incident regarding his girlfriend or ex-girlfriend." Defendant first told officers he would return in about an hour; then, he said he was at his bank and would return in about 10 minutes. The officers went to the bank, but defendant was not there.

When they were unable to locate defendant, an officer contacted Casey for more information. The officer had the impression "she was very scared," "[h]er voice was cracking" and the officer "could tell through the phone that [she] was genuinely scared of what the defendant might do to her."

That evening, officers made a second attempt to serve defendant and to arrest him for criminal threats. Officers parked down the street from defendant's residence, where they saw him emerge and enter a vehicle. The officers demanded defendant exit the vehicle; when he did, he was belligerent and uncooperative. Defendant refused to do as instructed, and he physically resisted being placed in and removed from the patrol car.

The officers took defendant to the office of the California Highway Patrol's Capitol Protection Section to be interviewed. As they escorted the handcuffed defendant down a hallway to the interview room, defendant "threw his left elbow into [the escorting officer's] chest." Defendant continued to resist even after the escorting officer pushed defendant against the wall, other officers came to assist and the escorting officer got defendant onto the floor to restrain him. During this process, defendant's lip was cut and he "was bleeding slightly from his mouth." Defendant started kicking at the officers and "spitting blood" at them. The officers were forced to place a nylon leg restraint on defendant to keep him from kicking them and a mesh "spit sock" over his head to prevent

6

him from spitting blood at them.  Defendant threatened that "he was going to kick [the officer's] ass" and "he was going to fuck [him] up."

DISCUSSION

I

Defendant contends the trial court prejudicially abused its discretion in admitting "prior or other act evidence to prove" criminal threats.  Defendant argues that *People v. Zack* (1986) 184 Cal.App.3d 409 (*Zack*) "prohibits admission of the other acts evidence in the present case" because defendant had not taken any act against Casey personally related to the gang, gun or domestic violence.  We find the trial court did not err in admitting the evidence of defendant's prior or other acts.

The elements required to prove a criminal threat are:  "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat – which may be 'made verbally, in writing, or by means of an electronic communication device' – was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citation.]"  (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228 (*Toledo*).)  Thus, the prosecution must show that Casey had a sustained and reasonable fear as a result of defendant's threat.

In *Zack*, the defendant was found guilty of murdering his ex-girlfriend in a brutal beating.  (*Zack*, *supra*, 184 Cal.App.3d at pp. 411-412.)  On appeal, Zack contended the court erred in admitting evidence of his prior bad acts toward the decedent, including

7

testimony that he had used force on the decedent and had threatened to kill her if she left him. (*Id.* at pp. 411, 412, 413.) The *Zack* court rejected the defendant's contention and stated: "Where a defendant is charged with a violent crime and has or had a previous relationship with a victim, prior assaults upon the same victim, when offered on disputed issues, e.g., identity, intent, motive, etcetera, are admissible based solely upon the consideration of identical perpetrator and victim without resort to a 'distinctive modus operandi' analysis of other factors." (*Id.* at p. 415.)

Defendant reads the holding in *Zack* as limited to those cases "where the defendant is charged with a violent crime, *and that he also* in his previous relationship with the victim must have committed 'prior assaults upon the same victim.' " (Original italics.) Defendant suggests *People v. McCray* (1997) 58 Cal.App.4th 159 (*McCray*) and *People v. Ogle* (2010) 185 Cal.App.4th 1138 (*Ogle*) as examples of the *Zack* rule being applied properly because it was used to admit prior acts committed against the victim herself. Both *McCray* and *Ogle* involved the admission of propensity evidence where the prior acts of violence were directed at the *victim* of the alleged threat. However, this factor was mere happenstance and not critical to the court's analysis.

Indeed, in *People v. Garrett* (1994) 30 Cal.App.4th 962, 966-968 (*Garrett*) the court ruled it was proper to admit evidence that the victim was aware not only of defendant's prior acts of violence directed at her but also of his prior conviction for manslaughter. (See also *People v. Wilson* (2010) 186 Cal.App.4th 789, 817 [finding it reasonable for victim to believe defendant would carry out threat where victim was aware of defendant's prior convictions and admitted assault].) The court reasoned section 422 incorporates a mental element not only of the defendant but also of the victim, and, therefore, the wife's knowledge that the defendant "had killed a man with a gun in the past" was relevant and more probative than prejudicial when he threatened to " 'put a bullet in [her] head.' " (*Garrett, supra,* at pp. 966-967.) As *Garrett* further noted, "[s]eldom will evidence of a defendant's prior criminal conduct be ruled inadmissible

when it is the primary basis for establishing a crucial element of the charged offense." (*Id*. at p. 967.)  Finally, *Garrett* concluded this evidence was not banned by Evidence Code section 1101, subdivision (a)'s ban on inadmissible character evidence but falls within the exception of subdivision (b) to prove a fact other than the defendant's disposition to commit an act.  (*Id*. at pp. 967-968.)

The evidence clearly demonstrates Casey knew of defendant's prior acts and her knowledge was probative as to the charged threat.  It is the pertinence of the victim's knowledge to the charged offense and not whether the prior acts were directed at the victim or another that we assess.  The prior acts are crucial factors to be considered in determining whether the victim's fear is "reasonable" or "sustained."  Therefore, the trial court did not err in admitting evidence of defendant's prior acts.

II

Without explaining how the evidence arguably shows an attempt, defendant contends the trial court erred by failing to instruct the jury sua sponte on attempt as to count one.  He does suggest, however, Casey's post on defendant's Facebook page, the lack of testimony of any "great bodily injury" to Granderson, and the "long" period of time Casey had known of defendant's gang affiliation and gun ownership prior to the threat are evidence that Casey did not have a reasonable or sustained fear.  We find there is not substantial evidence to merit an instruction on attempt.

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence.  The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.]  That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.  [Citations.]  The

9

obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given. [Citations.]' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154-155.)

"For a sua sponte instruction on attempt to be required, however, there must be 'evidence that a reasonable jury could find persuasive' on the point. [Citation.]" (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1455.) "[T]he existence of 'any evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[]" ' that the lesser offense, but not the greater, was committed. [Citations.]" (*People v. Breverman*, *supra*, 19 Cal.4th at p. 162, italics omitted.)

California recognizes attempted criminal threat as a separate crime. (*Toledo*, *supra*, 26 Cal.4th at p. 230.) "[A] defendant properly may be found guilty of attempted criminal threat whenever, acting with the specific intent to commit the offense of criminal threat, the defendant performs an act that goes beyond mere preparation and indicates that he or she is putting a plan into action." (*Ibid.*) Several potential circumstances may fall within the ambit of an attempted criminal threat: (1) the defendant takes all steps to issue a written criminal threat, but the threat is intercepted before it is received by the threatened person; (2) the defendant makes an oral threat but the threatened person for some reason does not understand the threat; or (3) the threatened person understands the threat, "but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear . . . ." (*Id.* at p. 231, original italics.) Defendant is claiming an instruction on attempted threat should have been given based on the third enumerated possibility – that the threatened person did not actually

10

suffer a reasonable sustained fear as a result of the threat. We must determine whether there is substantial evidence to support that conclusion.

Here, Casey repeatedly and consistently testified she was frightened by the telephone call because of defendant's violence toward her daughter, the escalation of defendant's threats against Casey, defendant's knowledge of Casey's immediate whereabouts, and Casey's knowledge of defendant's gun ownership and gang affiliation. The peace officers who interviewed her immediately after the telephone call and the following day both testified she was perceptibly frightened by defendant's threat. We find that no reasonable jury could be persuaded that Casey did not have a reasonable or sustained fear as a result of defendant's threat. Therefore, the trial court did not err in failing to instruct the jury sua sponte on attempted criminal threat.

DISPOSITION

The judgment is affirmed.

      NICHOLSON     , Acting P. J.

We concur:

      HULL          , J.

      BUTZ          , J.