Filed 11/4/14  P. v. Mendez CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>ARTHUR VITO MENDEZ,<br><br>  Defendant and Appellant. | H039054<br>(Santa Clara County<br>Super. Ct. No. C1114075) |

Defendant Arthur Vito Mendez was charged with making criminal threats to the manager of his apartment complex while under the influence of methamphetamine.  A jury found defendant guilty of making criminal threats and using methamphetamine. (Pen. Code, § 422; Health & Saf. Code, § 11550, subd. (a).)[1]  The trial court found allegations of seven prior strike convictions and one prior serious felony conviction to be true.  The court struck six of the seven strike priors and sentenced defendant to an aggregate term of nine years.

On appeal, defendant contends the trial court erred by admitting third party testimony about several prior incidents in which defendant engaged in yelling and screaming at fellow tenants.  Defendant argues that admission of this testimony violated

---

[1] Subsequent undesignated statutory references are to the Penal Code unless otherwise indicated.

Evidence Code sections 352 and 1101. To the extent defense counsel failed to object below, defendant asserts his counsel was ineffective.

The record shows the victim was aware of—and testified about—several prior incidents involving defendant's yelling and screaming at tenants in the apartment complex. We conclude that third party testimony about those incidents was relevant and admissible to prove the victim's state of mind. As to prior incidents of which the victim was unaware, the defendant suffered no prejudice from the admission of testimony about them. Accordingly, we conclude the defendant's claims are without merit. We will affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts of the Offenses*

In 2011, defendant was living in an apartment complex in the City of San José. He was scheduled to be evicted on August 15, 2011. The incident at issue in this appeal occurred on August 12, the same day the victim, Ben Robert, began serving as the new manager of the apartment complex. Defendant, while under the influence of methamphetamine, yelled belligerently at Robert, challenged him to a fight, and threatened him after Robert called the police.

Robert testified that he had been a resident at the apartment complex for about 10 years. In June 2011, defendant began exhibiting belligerent behavior around the complex. On Friday and Saturday nights, he would run around the pool area, yelling at neighbors and "calling everybody faggots." When Robert told defendant to be quiet, defendant told him to "Get your ass back in the house. You can't talk to me like that." On at least four occasions, defendant called Robert a "faggot" or a "got" and told him "I'm going to kick your ass." On occasions when defendant continued yelling for an extended period of time, Robert called the police. On at least three occasions in June, other tenants called the police to complain about defendant's behavior.

2

Among other tenants, defendant yelled and screamed at Marlene Bans. Bans lived on the second floor directly above defendant, who lived on the ground floor. He complained that she made too much noise and he could not sleep. On August 12, 2011, at around 5:30 a.m., someone threw a brick into Bans' living room window. Bans met with Robert about the incident later that day, telling him she wanted to move out because she was afraid of defendant.

Later that afternoon, defendant began running around the pool yelling at Bans and Robert. Defendant called Robert a "faggot" and told him "you should be man enough to come talk to me before you call the police." Defendant also yelled at Bans, calling her names and telling her not to call the police. Robert noticed that defendant was sweating and breathing hard, and his eyes were wide. Robert thought defendant was on drugs.

Defendant went in and out of his apartment two or three times, yelling each time he came out. After the third time, Robert, while standing on his second-floor balcony, told defendant to stop disturbing the tenants and instructed him to return to his apartment. Defendant yelled profanities, called Robert a "faggot," and told Robert he had no right to talk like that. Defendant told Robert he was going to "kick [Robert's] ass" and feinted running up the stairs at Robert. Robert told defendant he was going to call the police and went back into his apartment to do so. Later, Robert opened his front door and told defendant the police were on their way. Defendant formed his finger and thumb into the shape of a gun, pointed it at Robert, and stated: "Boom. You're dead."

Robert went out in front of the complex with a security guard to wait for the police. Defendant continued to threaten Robert, yelling, "I'm going to kick your ass. You're next." Defendant clenched both his fists at chest height and lunged toward Robert, causing him to step back. Defendant did this three or four times until the police arrived. The police arrested defendant and took him into custody.

3

Defendant told the police, "I had no choice.  I had to step up to him.  He had disrespected me and I had to do something about it."  A blood sample taken from defendant tested positive for methamphetamine.

B. *Procedural Background*

On January 26, 2012, the prosecutor charged defendant by information with: (1) making threats to commit a crime resulting in death or great bodily injury (§ 422); and (2) using or being under the influence of methamphetamine (Health & Saf. Code, § 11550, subd. (a).)  The information further alleged that defendant had sustained seven prior strike convictions (§§ 667, subds. (b)-(i), 1170.12) and one prior serious felony conviction (§ 667, subd. (a)).

The trial court held a bifurcated trial, with the substantive offenses tried by a jury, and the prior conviction allegations tried by the court.  On March 28, 2012, the jury found defendant guilty on both counts.  On May 22, 2012, the trial court found all prior conviction allegations to be true.

At sentencing, the trial court denied defendant's motion to reduce the criminal threats conviction to a misdemeanor under section 17, subdivision (b).  However, the court granted in part defendant's *Romero* motion and struck six of the seven prior strikes. (See *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.)  The court sentenced defendant to an aggregate term of nine years, as follows:  four years for making criminal threats (the middle term of two years, doubled for the prior strike); five years for the serious felony prior, to run consecutively; and 100 days for using or being under the influence of methamphetamine, to run concurrently.

## II. DISCUSSION

Defendant contends the trial court erred by admitting third party testimony about several prior incidents of his yelling and screaming at other tenants in the apartment complex.  Defendant does not challenge the admission of Robert's testimony about prior verbal outbursts; rather, defendant contests the admission of such testimony by third

party witnesses, as set forth below. The Attorney General contends that defendant forfeited his claim by failing to object below with sufficient specificity. Defendant argues that to the extent defense counsel failed to object, the error still requires reversal because counsel's failure to object constituted ineffective assistance of counsel.

A. *Factual Background: Third Party Testimony*

1. *Victorina Mary Gonzales*

Victorina Mary Gonzales served as an interim property manager at the apartment complex from mid-June to August 2011. She testified that the management company was in the process of evicting defendant because he was "causing some problems there, loud noise, you know, arguing with other tenants." During her time as manager, she received phone calls late at night from tenants—including Robert—complaining of defendant's screaming, yelling, and arguing. She instructed the tenants to call 911 when they called her to complain about defendant. She hired a security guard in part because of defendant's conduct, but she never told Robert why she had hired the guard. Gonzales' supervisor never told her to confront defendant in person, but she would not have been afraid to do so.

2. *Ronny Jensen*

Ronny Jensen was a tenant at the apartment complex for about three years. He testified that, at some point, defendant began to become "more forceful" and "more dominant" around the apartment complex. He liked to "walk big" and "strut like a turkey." Jensen testified that defendant "wouldn't actually ever put his hands on somebody," but over time, he became "progressively more aggressive" and "more verbal." At night, defendant would start "ranting and raving" around the pool area. Jensen would try to "blow it off as much as possible. Unless it affected me directly, you know, as long as I knew somebody wasn't going to get hurt, let him go." Numerous tenants—including Jensen—called the police to complain. Defendant once screamed at Jensen's son for moving cars around late at night.

5

On August 12, 2011, Jensen was entertaining guests and cooking dinner for them in his apartment. Some of his guests were outside by the pool. Defendant was "agitated about something" and "there were words exchanged." Jensen stayed in his apartment and called the police because his guests felt "very uncomfortable," but "not threatened." Jensen heard a lot of commotion outside and it was "getting loud all over the place." Defendant was "walking in circles, chanting, talking stuff." Jensen was aware that Robert was attempting to calm defendant during the incident. Jensen never saw defendant "put his hands on anyone."

3. *Samuel Gebretsdik*

Samuel Gebretsdik was a security guard at the apartment complex in August 2011. There were many times when Gebretsdik had to intervene because of defendant's behavior. Once or twice a week, defendant would get mad and start shouting and yelling. Gebretsdik spoke to the police three or four times about defendant because he was "disturbing the neighborhood." Other times, Gebretsdik would try to calm defendant and advise him not to disturb the neighbors. Sometimes defendant listened and became quiet; other times, he was out of control, and Gebretsdik had to call the police. When Gebretsdik could not calm defendant, Gebretsdik became nervous for the safety of himself and the tenants.

Gebretsdik was on duty during the incident on August 12, 2011. He saw defendant shouting and yelling at Bans. Defendant was "out of control," and Bans was panicked and scared. Gebretsdik and Robert both went to talk to defendant about his conduct. Defendant redirected his anger towards Robert and started yelling at him and telling him not to interfere. Gebretsdik then left to call the police. The police instructed Gebretsdik to wait outside, so he and Robert waited for the police out in front of the complex. While they were waiting, defendant tried to start a fight with Robert. Defendant was pulling on his own shirt and pounding his fists on his chest while calling

6

Robert the "f word" and telling him to "fight with me if you are a man." Gebretsdik and Robert stayed several feet away from defendant until the police arrived.

4. *Marlene Bans*

Bans testified that defendant complained to her "all the time" about her making noise and disturbing his sleep. At first, Bans testified that she was not scared of defendant's complaints. His complaints were calm, not yelling, and he spoke politely. But on August 12, 2011, he called her a "bitch." On that same day, someone threw a rock into her living room window. That scared Bans because her bed was close to the window, and the rock could have hit her in the head. After that, she wanted to move out because she was scared of defendant, and she thought "someday they're gonna kill me." Defendant never threatened Bans with any physical harm.

B. *The Prosecution's Motion in Limine*

The prosecutor moved in limine for admission of testimony concerning defendant's prior "out of control" behavior. The prosecutor proffered testimony similar to that summarized above describing defendant's outbursts and tenants' complaints or calls to the police.

The prosecutor argued that evidence of defendant's prior conduct was admissible on two grounds. First, the prosecutor argued that the evidence was relevant to establish two of the elements of the offense under section 422: (1) that defendant intended his statements to Robert to be taken as threats, and (2) that Robert's awareness of the prior conduct caused him to be in fear for his own safety. For this proposition, the prosecutor relied on *People v. Butler* (2000) 85 Cal.App.4th 745 (*Butler*). Second, the prosecutor argued that the evidence was admissible under section 1101, subdivision (b) to show defendant's intent, motive, and the existence of a common plan or pattern under the "doctrine of chances." Finally, the prosecutor argued that the evidence was admissible under Evidence Code section 352 (section 352) because its probative value substantially outweighed any danger of prejudice.

7

Defendant objected to evidence of prior conduct on the grounds that it was more prejudicial than probative, and that its admission would violate his due process rights. Defendant distinguished between evidence relevant to show Robert's state of mind—e.g., prior incidents about which Robert was aware—versus evidence introduced to show defendant's intent. Defendant argued that evidence offered for the latter purpose was inadmissible and irrelevant because it was "too much of a stretch" as to defendant's intent absent specific details or context about the incidents.

The trial court ruled that the proffered testimony was admissible to prove the elements of the offense under section 422. The court quoted *Butler*, *supra*, 85 Cal.App.4th at page 754, as follows: "The determination whether a defendant intended his words to be taken as a threat and whether the words were sufficiently unequivocal, unconditional, immediate, and specific [that] they conveyed to the victim an immediacy of purpose and immediate prospect of execution of the threat, can be based on all the surrounding circumstances and not just on the words alone. The parties' history can also be considered as one of the relevant circumstances." The court ruled that the evidence was admissible "for all those purposes," but told defendant that "if you wish the Court to hear argument as to what could be argued toward what, then we can deal with that at that point. I think now it's premature, so the evidence will go in toward proving all of those elements, but it may be that you say fact A cannot used to argue this. Then I'm willing to hear that and make the appropriate rulings."

Defendant then inquired as to whether the prosecutor was still seeking to admit the prior conduct evidence under section 1101, subdivision (b), as an alternative theory of admissibility. The prosecutor agreed that she was withdrawing that request. The prosecutor then inquired as to Ronny Jensen's testimony that he had called the police on prior occasions in response to defendant's "out of control" behavior. The trial court ruled that the testimony was admissible but did not specify the basis for its admission. As to Gonzales' hiring of a security guard in response to defendant's conduct, the court ruled

that the testimony was admissible on the condition that Robert was aware of the reason for hiring the guard.

Defendant requested a pretrial stipulation that "each objection posed during these motions in limine constitutes a continuing objection to admission." The prosecutor initially rejected the stipulation but sought clarification on the precise meaning of the stipulation. The trial court replied, "I think what he meant would be, for example, he objects to the use of a prior for impeachment and if I rule and I allow impeachment of a prior, then in trial he need not object again when you impeach." The prosecutor then agreed to the stipulation.

With two exceptions, defendant did not object at trial under section 1101 or section 352 to third party testimony about his prior conduct. However, during Jensen's testimony, the trial court sustained defendant's objection under section 1101 to evidence that defendant engaged in altercations with his girlfriend. Second, during Gebretsdik's testimony, the court overruled defendant's objection under section 1101 to evidence that Gebretsdik had to intervene in prior incidents involving defendant's conduct.[2]

C. *Legal Principles*

1. *Standard of Review*

"We review for abuse of discretion a trial court's rulings on relevance and admission or exclusion of evidence under Evidence Code sections 1101 and 352." (*People v. Cole* (2004) 33 Cal.4th 1158, 1195.)

2. *Elements of the Offense Under Section 422*

The offense of making criminal threats under section 422 requires five elements: "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat

---

[2] Defendant also objected on hearsay grounds to Gonzales' testimony that numerous tenants had called her to complain about defendant, but the court overruled the objection.

'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

"As used in the statute, 'sustained' has been defined to mean 'a period of time that extends beyond what is momentary, fleeting, or transitory.... The victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear.' " (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 [quoting *People v. Wilson* (2010) 186 Cal.App.4th 789, 808 (*Wilson*)].) Furthermore, "[T]he defendant must intend for the victim to receive and understand the threat. . . ." (*Wilson*, 186 Cal.App.4th at p. 806.) "Section 422 'was not enacted to punish emotional outbursts, it targets only those who try to instill fear in others. [Citation.]' [Citation.] The statute 'does not punish such things as "mere angry utterances or ranting soliloquies, however violent." [Citation.]' [Citation.] Instead, a criminal threat 'is a specific and narrow class of communication,' and 'the expression of an intent to inflict serious evil upon another person.' " (*Id.* at p. 805.)

3. *Evidentiary Rules*

" 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) However, a theory of relevance that depends on a defendant's character trait or propensity to engage in certain conduct is generally impermissible.

10

Under section 1101, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) Instead, under subdivision (b), evidence of prior conduct is admissible "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act." "It is the prosecutor's burden at trial to prove a defendant's prior misconduct by a preponderance of the evidence." (*People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1444.)

Under section 352, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "When evidence of prior offenses is presented to a jury, there is inherent danger of prejudice to an accused. Therefore, such evidence should be received with caution and admitted only when its probative value outweighs its prejudicial effect." (*People v. Evers* (1992) 10 Cal.App.4th 588, 599.)

4. *Ineffective Assistance of Counsel*

"To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. [Citations.] Counsel's performance was deficient if the representation fell below an objective standard of reasonableness under prevailing professional norms. [Citation.] Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93, citing *Strickland v. Washington* (1984)

11

466 U.S. 668, 687-688, 693-694 (*Strickland*).) " 'Finally, prejudice must be affirmatively proved; the record must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (*People v. Bolin* (1998) 18 Cal.4th 297, 333.) It is defendant's burden on appeal to show by a preponderance of the evidence that he was denied effective assistance of counsel and is entitled to relief. (*People v. Dowdell* (2014) 227 Cal.App.4th 1388.)

D. *Application of the Legal Principles to the Trial Court's Evidentiary Rulings*

    1. *Forfeiture of the Claim on Appeal*

As an initial matter, we address the Attorney General's argument that defendant failed to object below with sufficient specificity. Defendant argues that he properly objected during in limine proceedings, and that the parties stipulated that any pretrial objection would constitute a continuing objection at trial. The Attorney General acknowledges that defendant objected pretrial under section 352 but contends that defendant failed to object under section 1101.

We conclude defendant generally lodged sufficiently specific objections below, but that to the extent he failed to do so, he may raise his claim based on ineffective assistance of counsel. First, the record clearly establishes that defendant objected pretrial to the admission of the prior conduct evidence under section 352. Second, defendant argued that the prosecutor's evidentiary proffer was not made with sufficient detail to establish the relevance of the testimony to the element of intent. While defendant did not explicitly object under section 1101, the prosecutor withdrew her motion to admit the evidence under subdivision (b) of section 1101. Thus, the evidence was offered and

12

admitted solely to prove the elements of the offense under the theory of relevance set forth in *Butler*.[3]

Arguably, the trial court's ruling in limine required defendant to lodge further objections at trial. Apparently in response to defendant's objection to the lack of specificity in the prosecutor's proffer, the court stated that "if you wish the Court to hear argument as to what could be argued toward what, then we can deal with that at that point. I think now it's premature. . . ." Defendant did, in fact, lodge an objection at trial to Gebretsdik's prior conduct testimony under subdivision (a) of section 1101, and the trial court overruled it. In any event, any failures to object would have constituted ineffective assistance of counsel. More importantly, under either version of his claim, defendant must show prejudice under the same standard—he must demonstrate a reasonable probability of a more favorable outcome absent the error. (*Strickland*, *supra*, 466 U.S. at p. 694; *People v. Watson* (1956) 46 Cal.2d 818, 836.)[4] Accordingly, we will assess the prejudice of any error under this standard regardless of whether counsel should have objected.

2. *Admissibility of the Evidence*

Defendant concedes that evidence of his prior misconduct was relevant to Robert's state of mind—i.e., that Robert's knowledge of defendant's prior behavior was relevant

---

[3] *Butler*, which concerned the sufficiency of the evidence, did not consider the application of section 1101. (See *Butler*, *supra*, 85 Cal.App.4th at pp. 752-753.) Thus, as defendant points out, the trial court's ruling appears to have stemmed from an "imprecise discussion of the law." On appeal, the parties now appear to agree that *Butler* does not provide an independent ground for admitting such evidence and that evidence of prior misconduct is admissible to prove the elements of a criminal threats offense only as provided in Evidence Code section 1101, subdivision (b).

[4] Defendant argues the proper standard for harmless error analysis is set forth in *Chapman v. California* (1967) 386 U.S. 18 (requiring reversal unless the prosecutor shows the error to be harmless beyond a reasonable doubt). We disagree. Even assuming the court erred, its ruling did not "so infuse[] the trial with unfairness as to deny due process of law." (*Lisenba v. California* (*1941*) 314 U.S. 219, 228.)

to whether Robert "was in a state of sustained fear." (*People v. Allen*, *supra*, 33 Cal.App.4th at p. 1156.) However, defendant argues on appeal that only Robert could testify about such incidents, and that the trial court erred by admitting third party testimony about them. Thus, defendant does not contest the admissibility of Robert's testimony concerning defendant's prior conduct; he challenges only such testimony by third parties. The Attorney General counters that the record shows Robert was aware of the incidents described in the third party testimony, such that the evidence was germane to Robert's state of mind.

Under *Butler* and similar cases, evidence concerning a defendant's prior conduct is relevant to the victim's state of mind, provided the victim is aware of the prior conduct. (See *Butler*, *supra*, 85 Cal.App.4th at pp. 753-754.) The rule is illustrated by *People v. Garrett* (1994) 30 Cal.App.4th 962 (*Garrett*). Garrett was convicted of making criminal threats to his wife. The defense moved to exclude evidence of the wife's knowledge of Garrett's prior manslaughter conviction and his history of beating her. The court held the evidence admissible to show the wife's reasonable state of sustained fear. (*Id.* at p. 967.) And nothing in *Butler*, *Garrett*, or any other authority presented by defendant limits such evidence solely to testimony by the victim.

Even assuming it was error for the court to admit evidence of prior conduct of which Robert was unaware, defendant cannot show he was prejudiced. First, even if all the evidence of prior conduct had been excluded, Robert's testimony was consistent and convincing as to the facts necessary to establish defendant's guilt. Gebretsdik's testimony corroborated Robert's allegations about defendant's belligerent outburst following the argument with Bans and defendant's attempts to instigate a fight with Robert. There is no dispute that defendant made the statements in question. Defendant himself admitted to police that he felt compelled to confront Robert because Robert had disrespected him.

14

Furthermore, as set forth above, the prosecution presented abundant evidence from Robert himself concerning defendant's prior conduct, including multiple incidents in which Robert and other tenants called the police due to defendant's unruly behavior. Defendant concedes the admissibility of Robert's testimony about these incidents. The fact that other witnesses testified to similar conduct likely had little impact on the jury's verdict. Defendant further argues that the additional testimony was cumulative and necessitated an undue consumption of time under section 352. But we conclude the trial court did not abuse its discretion on these grounds, and whatever additional time was required for the third party testimony did not prejudice defendant in any fashion. Thus, even if the court had excluded the challenged testimony, it is not reasonably probable the jury would have reached a more favorable outcome.

Because defendant cannot show he was prejudiced by the admission of the challenged testimony, we will affirm the judgment.

### III.    DISPOSITION

The judgment is affirmed.

_____

Márquez, J.

WE CONCUR:

_____

Bamattre-Manoukian, Acting P.J.

_____

Grover, J.