Filed 6/9/15  P. v. Jones CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent.<br><br>v.<br><br>PAUL E. JONES,<br><br>    Defendant and Appellant. | 2d Crim. No. B254908<br>(Super. Ct. No. KA102869)<br>(Los Angeles County) |

Paul E. Jones appeals his conviction by jury of criminal threats.  (Pen. Code, § 422, subd. (a).)[1]  The trial court found true the allegations of a serious felony prior conviction (§ 667, subd. (a)(1)), a prior prison term (§ 667.5, subd. (b)), and prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).  It struck the prior prison term allegation and sentenced appellant to nine years in state prison, consisting of two years on the criminal threats count, doubled to four years per the strike, plus five years for the prior conviction (§ 667, subd. (a)(1)).  Appellant was awarded 409 days of custody credits.

Appellant contends the trial court abused its discretion by allowing the prosecution to admit evidence of his prior murder conviction to show that the victim had a reasonable and sustained fear of death or bodily harm.  He also asserts the evidence is insufficient to support his conviction.  We affirm.

[1] All statutory references are to the Penal Code unless otherwise stated.

FACTS

Appellant was convicted of murder in 1981 and paroled in 2009. He lived with his mother, Bettye Johnson, and her two grandchildren. One day in August 2013, appellant became angry. He "bumped" Johnson while she was at the refrigerator and started cursing and flailing his arms. When she asked him to stop, he got angrier. Appellant said that he would "burn the house down and hope everybody dies in the house." He then left.

Johnson immediately called the police because she was afraid that appellant would get "physical" with her. During the 911 call, which the jury heard, Johnson said that appellant was "cussing and screaming and -- and telling me he's gonna blow my head off." She asked the police dispatcher to "send somebody in a hurry" and instructed her grandson, Parker, to go back into his room. Johnson said she wanted appellant "to leave and not come back," but was concerned because "he's got [the] keys to my house."

The sheriff's deputy who responded to the call found Johnson and Parker outside and described them as "shaken up." Parker thought appellant was capable of burning down the house because of his violent behavior. Johnson told the deputy she was fearful for her safety and that of her grandchildren because appellant "was on parole for murder." Following his arrest, appellant made a series of jailhouse phone calls to dissuade his mother and Parker from testifying against him.

Appellant called Parker's sister, Kristen, as a witness. Kristin, who was at the house on the day of the incident, heard appellant arguing with Johnson, but did not hear what they were saying. She did not hear appellant make any threats.

DISCUSSION

*Admission of Prior Murder Conviction*

Appellant contends the trial court abused its discretion when it admitted evidence of his 1981 murder conviction because it was too attenuated from the present offense and because its potential for undue prejudice substantially outweighed its probative value. (Evid. Code, §§ 352, 1109, subd. (e).) We are not persuaded.

2

The trial court held a hearing outside the jury's presence to decide whether Johnson could testify that she feared appellant's threat because of his prior murder conviction. Appellant moved to exclude the evidence, arguing that his mother's "understanding of the facts and circumstances surrounding the murder [were] inaccurate." Appellant expressly disavowed "any complaints regarding the [murder] conviction because of how old it is." He also contended that regardless of Johnson's understanding of his murder conviction, prejudice automatically results anytime "anybody hears murder."

The trial court acknowledged that the evidence was "certainly" prejudicial, but determined that *People v. Garrett* (1994) 30 Cal.App.4th 962 (*Garrett*), supported its admission. The court emphasized that the prior murder conviction was not being introduced for a dispositional purpose, but rather to establish a "crucial element" of criminal threats – the victim's reasonable and sustained fear. The court noted that Johnson might be fearful because she knew that "the gentleman who is making a threat took someone's life at some other point in his life."

Generally, evidence of a person's bad acts is inadmissible to prove a person's propensity to commit similar acts on a separate occasion. (Evid. Code, § 1101, subd. (a).) But this rule does not affect the admissibility of evidence to prove some other relevant fact, such as an element of the offense. (Evid. Code, §§ 1101, subds. (b) & (c), 210.) Nonetheless, the court may exclude relevant evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

To establish a violation of section 422, the prosecution had to prove that defendant acted with the specific intent that his statement be taken as a threat, that the threat caused Johnson to be in sustained fear and that her fear was reasonable under the circumstances. (§ 422, subd. (a);[2] *Garrett, supra,* 30 Cal.App.4th at pp. 966-967.) A

_____

[2] Section 422, subdivision (a), states: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with

3

defendant's prior criminal and violent conduct is relevant to establish these elements. (*People v. Jones* (2012) 54 Cal.4th 1, 49; *Garrett,* at p. 966; see *People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) Specifically, "'[t]he victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear. [Citation.]'" (*People v. Wilson* (2010) 186 Cal.App.4th 789, 808.) As *Garrett* observed, "[s]eldom will evidence of a defendant's prior criminal conduct be ruled inadmissible when it is the primary basis for establishing a crucial element of the charged offense." (*Garrett*, at p. 967.)

In *Garrett*, the defendant's wife hung up on him during an argument. The defendant called her back and said, "'[Y]ou better sit here on this . . . phone and listen to me, because when I get off this phone, I'm coming there to put a bullet in your head.'" (*Garrett, supra,* 30 Cal.App.4th at p. 965.) The court upheld the admission of evidence that the wife knew about his prior manslaughter conviction. (*Id.* at p. 966.) It stated: "Clearly . . . the fact that Wife knew that [the defendant] had killed a man with a gun in the past and that [he] was aware that she knew . . . is extremely relevant and probative in terms of establishing . . . that . . . his statement that he would 'put a bullet in [Wife's] head,' would be taken as a threat; that upon hearing the statement, Wife was in a state of sustained fear; and that the nature of the statement was such as to convey an immediate prospect of execution of the threat and to render Wife's fear reasonable." (*Id.* at p. 967.)

Like the defendant in *Garrett,* appellant was charged with criminal threats, had a prior homicide conviction and was related to the victim. (See *Garrett, supra,* 30 Cal.App.4th at pp. 966-967.) Although Johnson testified she did not know the details surrounding appellant's murder conviction, she was aware he was on parole for that conviction when he threatened to burn down her house with everyone in it. Johnson's

---

the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

knowledge of the prior murder conviction was highly probative on each element of the charge of making a criminal threat: appellant's specific intent that Johnson construe his words as a threat; whether she was in sustained fear as a result of that threat; and, whether that fear was reasonable. (*Garrett,* at p. 967.) That the evidence was also damaging to the defense does not make it unduly prejudicial within the meaning of Evidence Code section 352. (*People v. Zapien* (1993) 4 Cal.4th 929, 958, superseded by statute on other grounds.)

Appellant argues his prior murder conviction was not probative because it occurred 32 years earlier. As the People point out, appellant was in prison for 28 of those years, with the threat occurring four years after his release. Where, as here, the defendant was incarcerated for the majority of the time between offenses, the prior crime is not "so remote as to warrant [its] exclusion." (*People v. Davis* (2009) 46 Cal.4th 539, 602; *People v. Peete* (1946) 28 Cal.2d 306, 308-309, 318-319 [lapse of 23 years since prior conviction was insignificant given that defendant was incarcerated for 18 of those years].)

In *People v. Culbert* (2013) 218 Cal.App.4th 184, we held that the lapse of 11 years between the prior incident and the present offense did not require exclusion of the evidence. In both instances, the defendant had confronted family members and threatened to kill them. (*Id.* at p. 192.) We concluded that "[g]iven the similarities between the two incidents and the prior incident's relevance in proving appellant's intent and [the victim's] reasonable fear, the trial court had discretion to admit the evidence." (*Id.* at p. 193.)

Appellant contends the two incidents here are not sufficiently similar to justify admission of the prior. We disagree. Appellant was convicted of murder and served a 28-year prison term. Four years after his release, he became angry and abusive, telling his mother he would burn down the house and hopefully kill everyone in it. Given the murder's relevance in proving appellant's intent and his mother's reasonable fear, the trial court had discretion to allow the evidence. (See *People v. Culbert, supra,* 218 Cal.App.4th at p. 193; *Garrett, supra,* 30 Cal.App.4th at p. 967.)

5

*Sufficiency of the Evidence*

Appellant argues the evidence was insufficient to prove he violated section 422 because the threat to burn down the house was not "so unequivocal, unconditional, immediate, and specific [that it] convey[ed] . . . a gravity of purpose and an immediate prospect of execution of the threat," so as to cause Johnson "reasonably to be in sustained fear for . . . her own safety or for . . . her immediate family's safety."  (§ 422, subd. (a).)  He contends the statement was merely an emotional outburst during an argument with his mother rather than a serious death threat.

In reviewing an insufficient evidence claim, we consider the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence such that a reasonable jury could find the defendant guilty beyond a reasonable doubt.  (*People v. Elliot* (2005) 37 Cal.4th 453, 466.)  We presume the existence of every fact supporting the judgment that the jury reasonably could deduce from the evidence, and a judgment will be reversed only if there is no substantial evidence to support the verdict under any hypothesis.  (*People v. Bolin* (1998) 18 Cal.4th 297, 331; *People v. Quintero* (2006) 135 Cal.App.4th 1152, 1162.)  On review, we may not substitute our judgment for that of the jury, reweigh the evidence, or reevaluate the credibility of witnesses.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

For purposes of section 422, the nature of a threat must be determined by reviewing the circumstances under which it is made.  (*People v. Butler* (2000) 85 Cal.App.4th 745, 753 [ambiguous statement may be criminal threat under certain circumstances].)  In other words, threats are judged by their context.  (*People v. Bolin, supra,* 18 Cal.4th at pp. 339-340.)  Appellant compares this case to *In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1135-1136, 1138 (*Ricky T.*), in which the statements, "'I'm going to get you'" and "'I'm going to kick your ass,'" were held not to be criminal threats because they were neither unequivocal nor immediate.  We reject the comparison.

6

The juvenile in *Ricky T.* made the allegedly threatening statements when the victim, a teacher, accidentally hit him while opening a door. (*Ricky T.*, *supra,* 87 Cal.App.4th at p. 1137.) There was no evidence of a show of physical force by the juvenile, nor any attempt to use force against the victim. (*Id.* at p. 1138.) The incident also was not reported to the police until the next day. (*Ibid.*)

Here, the evidence of conduct both before and after appellant's threat reasonably justifies the jury's conclusion that it caused objectively reasonable fear for more than a "momentary, fleeting, or transitory" period of time. (*People v. Allen*, *supra*, 33 Cal.App.4th at p. 1156.) His threat to burn down the house with everyone in it, including Johnson and her grandchildren, was not an "angry adolescent's utterance[]" made in "emotional response to an accident" between a student and teacher. (*Ricky T., supra,* 87 Cal.App.4th at p. 1141.) It was an utterance to a close relative by a man she knew was on parole for murder and who was behaving erratically. Not only did Johnson immediately dial 911, but she also asked the dispatcher to "send somebody in a hurry." She said, "My son's going crazy," and reported that he was cursing, waving his arms and "throwing stuff." She expressed concern that he had the key to her house, saying, "I don't want him to have it."

The responding sheriff's deputy described both Johnson and Parker as "shaken up." Parker believed appellant was capable of burning down the house because of the way he was acting, and Johnson was afraid because appellant "was on parole for murder." Appellant asserts that since he was about to go to work, the machinations of burning down a house rendered his threat fleeting and fantastical, regardless of its offensive nature. Even if such an inference were plausible, it is the function of the jury, not the appellate court, to evaluate the evidence and make reasonable inferences. (See *People v. Ochoa*, *supra,* 6 Cal.4th at p. 1206.) The jury could reasonably believe based on the evidence presented, particularly Johnson's knowledge of the prior murder

7

conviction and her reaction to the threat, that it was far more serious than an emotional outburst.

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

8

Juan Carlos Dominguez, Judge

Superior Court County of Los Angeles

_____

Jerome J. Haig, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Jessica C. Owen, Deputy Attorney General, for Plaintiff and Respondent.